## In re INVENTIVE PACKAGING CORPORATION, a Colorado Corporation, Debtor.

**Bankruptcy No. 86 B 00143 C.**

United States Bankruptcy Court, D. Colorado.

Dec. 7, 1987.

---

John Weeda, Denver, Colo., for plaintiff.

Paul D. Rubner, Rubner & Kutner, P.C., Denver, Colo., for defendant.

**OPINION AND ORDER ON THE OBJECTION OF INTERNAL REVENUE SERVICE TO CONFIRMATION OF THIRD AMENDED PLAN**

PATRICIA A. CLARK, Bankruptcy Judge.

This matter comes before the Court upon the objection of the Internal Revenue Service (IRS) to the confirmation of the debtor's third amended plan of reorganization. Pursuant to Paragraph 4.2 of the debtor's third amended plan, the priority tax claims of the IRS under Section 507(a)(7) of the Bankruptcy Code are to be paid interest at the rate of 8.5 percent per annum semi-annually over a period of approximately three years.

The IRS contends that the appropriate interest rate on their Section 507(a)(7) priority tax claim should be 10 percent pursuant to 26 U.S.C. § 6621. Moreover the IRS contends that any payments should be made on a monthly basis instead of a semi-annual basis.

At the outset the Court notes that 11 U.S.C. § 1129(a)(9)(C) provides:

(a) The court shall confirm a plan only if all of the following requirements are met:

. . . .

(9) Except to the extent that a holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

. . . .

(C) with respect to a claim of a kind specified in Section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

Under the debtor's plan of reorganization, Section 1129(a)(9)(C) is utilized to require the IRS to make, in effect, a forced loan to the debtor over a period of approximately three years.

Since the amount of the IRS's 507(a)(7) claim has been agreed to by the parties, the only outstanding issues before the Court are the determination of an appropriate interest rate and the number of installment periods necessary to provide the IRS sufficient deferred cash payments of a present value that will equal the allowed amount of their claim.

As to the interest rate applicable in this case, it should be noted that the economic and equitable components of a reasonable interest rate are inherently imprecise. Neither law nor economics has as yet devised an iron-clad formula for constructing an appropriate market rate of interest that will adequately compensate the creditor for the use of its money by the debtor over time. This is because interest rates in general are often affected by the unforseen vagaries of the world economy and an adequate interest rate at one point in time may prove to be inadequate at a later time.

■ An appropriate market rate of interest to be paid by a Chapter 11 reorganizing

debtor depends upon a case-by-case analysis of the particular risk-return factors involved. There are a number of factors that are used to guide the Court in establishing an appropriate rate of interest in order to satisfy the requirements of 11 U.S.C. § 1129. The factors to be considered by the Court include, but are not limited to, the historical financial performance of the debtor, the relative financial risk associated with the debtor's projected future income flows in its plan of reorganization, the subsequent risk of default by the debtor, the quality of the security, if any, available to the creditor, and the length of the pay-out period of the loan to the debtor. *See In re Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); and *In re Mitchell*, 39 B.R. 696 (Bankr.Or.1984); 5 *Collier on Bankruptcy*, ¶ 1129.03 (15th ed. 1982).

■ As noted earlier, the IRS contends that the appropriate market rate of interest should be the rate established pursuant to 26 U.S.C. § 6621,[1] which currently is 10

1. **SEC. 6621. DETERMINATION OF RATE OF INTEREST.**
   (a) GENERAL RULE.—
   (1) OVERPAYMENT RATE.—The overpayment rate established under this section shall be the sum of—
   (A) the short-term Federal rate determined under subsection (b), plus
   (B) 2 percentage points.
   (2) UNDERPAYMENT RATE.—The underpayment rate established under this section shall be the sum of—
   (A) the short-term Federal rate determined under subsection (b), plus
   (B) 3 percentage points.
   (b) SHORT–TERM FEDERAL RATE.—For purposes of this section—
   (1) GENERAL RULE.—The Secretary shall determine the short-term Federal rate for the first month in each calendar quarter.
   (2) PERIOD DURING WHICH RATE APPLIES.—
   (A) IN GENERAL.—Except as provided in subparagraph (B), the Federal short-term rate determined under paragraph (1) for any month shall apply during the first calendar quarter beginning after such month.
   (B) SPECIAL RULE FOR INDIVIDUAL ESTIMATED TAX.—In determining the addition to tax under section 6654 for failure to pay estimated tax for any taxable year, the Federal short-term rate which applies during the 3rd month following such taxable year shall

   also apply during the first 15 days of the 4th month following such taxable year.
   (3) FEDERAL SHORT–TERM RATE.—The Federal short-term rate for any month shall be the Federal short-term rate determined during such month by the Secretary in accordance with section 1274(d). Any such rate shall be rounded to the nearest full percent (or, if a multiple of ½ of 1 percent, such rate shall be increased to the next highest full percent).
   (c) INTEREST ON SUBSTANTIAL UNDERPAYMENTS ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS.—
   (1) IN GENERAL.—In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section shall be 120 percent of the underpayment rate established under this subsection.
   (2) SUBSTANTIAL UNDERPAYMENT ATTRIBUTABLE TO TAX MOTIVATED TRANSACTIONS.—For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000.
   (3) TAX MOTIVATED TRANSACTIONS.—

percent. The majority of courts that have examined the utilization of the interest rate in 26 U.S.C. § 6621 have rejected its use as the conclusive determinant of an appropriate market rate of interest under 11 U.S.C. § 1129(a)(9)(C) of the Bankruptcy Code. The Eighth, Ninth and Eleventh Circuits have refused to adopt the Section 6621 as the rate required by Section 1129(a)(9)(C) of the Bankruptcy Code because it is not an appropriate proxy for the relevant market rate. The Section 6621 rate often lags behind the true market rate and does not take into account the duration of the deferment of the present use of funds. Moreover, the Section 6621 rate reflects tax objectives and not those of the bankruptcy laws. *See In re Camino Real Landscape Maintenance Contractors*, 818 F.2d 1503 (9th Cir.1987); *In re Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *U.S. v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986). This Court adopts the rationale expressed in the above-mentioned Eighth, Ninth and Eleventh Circuit cases and finds that as a matter of law the Section 1129(a)(9)(C) rate

of the Bankruptcy Code is not the Section 6621 rate of the Internal Revenue Code. The Section 6621 rate, however, is relevant in setting the appropriate 1129(a)(9)(C) rate, but it cannot be adopted as a *per se* determinant.

The debtor contends that this Court should utilize a risk premium analysis in establishing an adequate rate of interest to be paid to the IRS. A risk premium analysis is indeed one methodology used by the Court in determining an appropriate market rate of interest under 11 U.S.C. § 1129(a)(9)(C). A risk premium analysis requires the Court to attach some interest increment to an appropriate measure of a risk-free return in order to reflect an appropriate interest rate return for the financial risks faced by the lender.

In an argument strikingly similar to that of the IRS's position on the Section 6621 rate, the debtor contends that the interest rate for judgments pursuant to 28 U.S.C. § 1961(a) should serve as the base measure of a risk-free return. The interest rate in 28 U.S.C. § 1961(a)[2] as of November 6, 1987, the date of the hearing on

(A) IN GENERAL.—For purposes of this subsection, the term "tax motivated transaction" means—

(i) any valuation overstatement (within the meaning of section 6659(c)),

(ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),

(iii) any straddle (as defined in section 1092(c) without regard to subsection (d) and (e) of section 1092), and

(iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and

(v) any sham or fraudulent transaction.

(B) REGULATORY AUTHORITY.—The Secretary may by regulations specify other types of transactions which will be treated as tax motivated for purposes of this subsection and may by regulations provide that specified transactions being treated as tax motivated will no longer be so treated. In prescribing regulations under the preceding sentence, the Secretary shall take into account—

(i) the ratio of tax benefits to cash invested,

(ii) the methods of promotion the use of this type of transaction, and

(iii) other relevant considerations.

(C) EFFECTIVE DATE FOR REGULATIONS.—Any regulations prescribed under subparagraph (A)(iv) or (B) shall apply only to interest accruing after a date (specified in such regulations) which is after the date on which such regulations are prescribed.

(4) JURISDICTION OF TAX COURT.—In the case of any proceeding in the Tax Court for a redetermination of a deficiency, the Tax Court shall also have jurisdiction to determine the portion (if any) of such deficiency which is a substantial underpayment attributable to tax motivated transactions.

2. § 1961. Interest
(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

confirmation,[3] was 6.9 percent. The debtor contends that a risk premium of 1.6 percent should be attached to that rate in order to provide a market rate of interest to be paid to the IRS in the nature of 8.5 percent.

This Court rejects the utilization of the 6.9 percent rate reflected in 28 U.S.C. § 1961(a) as a measure of a risk-free rate of return in this case because such rate is equated to the yield of the latest auction of 52–week United States T–Bills. The utilization of the 52–week T–Bill rate is inappropriate in this circumstance because the length of the pay-out period to the IRS under the debtor's plan of reorganization is approximately three years.

■ A more appropriate rate to be utilized as an indication of the risk-free interest rate is the current yield as of November 6, 1986 on T–Notes of a three-year duration. The Court takes judicial notice that as of that date the yield on three-year T–Notes was approximately 7.8 percent.

Pursuant to the framework of a risk premium analysis, the Court begins with this baseline of 7.9 percent, and from the evidence before it establishes a risk premium to be added to the 7.9 percent figure. The only evidence before the Court on the amount of a risk premium is testimony on behalf of the debtor that a risk premium of 1.6 percent should be attached to the appropriate risk-free rate in order to adequately compensate the IRS under Section 1129(a)(9)(C) of the Bankruptcy Code. The IRS has proffered no testimony as to an appropriate risk premium, merely choosing to rest their case upon the Section 6621 interest rate of 10 percent. Therefore, attaching a risk premium of 1.6 percent to the appropriate risk-free rate of 7.9 percent yields a rate of 9.5 percent. This 9.5 percent rate is an important indicator of an appropriate market rate of interest to be paid to the IRS in this case because it is an estimate of the particular financial risks faced by the debtor over a period of time equal to the IRS's proposed payment period.

Another index of financial risk used by the Court in determining an appropriate rate of interest under Section 1129(a)(9)(C) is the prime rate. The prime rate on November 6, 1987 was 8.75 percent. It should be noted that the prime rate is the rate charged to quality borrowers but is not necessarily the lowest rate. Some borrowers in the market pay above this prime rate and many borrowers pay below the prime rate. Noting that this debtor has been moribund for almost a year, and noting that the debtor is in Chapter 11, it is the Court's opinion that the prime rate of 8.75 percent is less than the market rate to be afforded the IRS in this case.

As an additional indicant of comparative financial risk, the Court notes that the Class II claimants in the debtor's third amended plan of reorganization are to receive 1.5 points above the prime rate, or 10.25 percent as of November 6, 1987. Their rate of interest will vary over time according to the changes in the prime rate. The IRS rate under the plan, however, will be a fixed rate and, noting that rates have recently declined as a result of the stock market downturn in October of this year, it does not seem inappropriate to grant the IRS a fixed rate that is currently less than the 10.25 percent variable rate that will be received by the Class II claimants under the plan.

Finally, the Court notes that the IRS's claim is unsecured; however, the Court has determined that the debtor's plan of reorganization is feasible, which in turn reduces the risk of default by the debtor.

In summary, the Court finds that the IRS is entitled to a rate somewhere between 8.75 percent and 10.25 percent. Although the Internal Revenue Code Section 6621 rate of 10 percent propounded by the IRS is relevant, the Court finds this rate of

---

3. This Court confirmed the debtor's third amended plan of reorganization at the hearing on November 6, 1987. The debtor agreed to escrow any monies due the IRS pending resolution of the issue of appropriate market rate of interest to be paid the IRS on its Section 507(a)(7) claim. Specifically, the Court found the debtor's plan feasible regardless of whether the appropriate market rate of interest was later held to be 8.5 percent, 10 percent, or somewhere in the range between those two rates.

little use as a conclusive determinant of an exact rate. Instead, the Court finds that the risk premium analysis rate of 9.5 percent (based on an interest premium of 1.6 percent attached to a relevant risk-free rate of 7.9 percent) is a better indicant of the market rate of interest on November 6, 1987. Therefore, in view of all the facts before the Court in this case, the Court finds that the appropriate market rate of interest to be provided to the IRS on its Section 507(a)(7) claim in order to satisfy Section 1129(a)(9)(C) of the Bankruptcy Code is 9.5 percent.

As to the issue of the appropriate installment period, it should be noted that there is but one case that has addressed this particular issue. In *In re Mason and Dixon Lines, Incorporated,* 71 B.R. 300 (Bankr.M.D.N.Car.1987) the court held that the term "deferred cash payments" required by Section 1129(a)(9)(C) required monthly installments unless special or unusual circumstances exist to vary that normal payment interval. This Court adopts the general rule as expressed in *In re Mason and Dixon Line, Incorporated,* in order to provide a Section 507(a)(7) creditor with some degree of financial certitude that its claims will be paid promptly and in full under a plan of reorganization.

The debtor contends that the payments to the IRS should be made on a semi-annual basis because the debtor needs to husband funds for cash flow purposes. However, the debtor is paying other debts under the plan of reorganization on a monthly basis, and this Court holds that no unusual circumstances exist to vary from the general rule applied in *In re Mason and Dixon Lines, Incorporated.* Accordingly, this Court holds that the payments to be made to the IRS under the debtor's third amended plan shall be made on a monthly basis.

WHEREFORE, it is HEREBY ORDERED that the debtor pay the IRS at a rate of 9.5 percent in monthly installments on the IRS's 507(a)(7) claim in order to comply with the provisions of Section 1129(a)(9)(C) of the Bankruptcy Code.