**In re SNOWDEN'S LANDSCAPING CO., Debtor.**

**Bankruptcy No. 88–01029.**

United States Bankruptcy Court, S.D. Alabama.

Jan. 18, 1990.

William Harris, for debtor.

William R. Sawyer, Asst. U.S. Atty.

MEMORANDUM OPINION

ARTHUR B. BRISKMAN,
Bankruptcy Judge.

1. A petition under Chapter 11, title 11 of the United States Code, 11 U.S.C. § 101 et sequentia, was filed on June 9, 1988 by the Debtor-in-possession, Snowden's Landscaping Co. (hereafter Debtor).

2. On June 27, 1989, Debtor filed a disclosure statement and proposed plan of reorganization. On August 31, 1989, the Court approved the disclosure statement accompanying Debtor's proposed plan of reorganization.

3. In 1985, A. G. Snowden and Ricky Roy Snowden formed a partnership, Snowden's Landscaping Co. Since the 1960's, A. G. Snowden has been engaged in the business of excavation. The earth or dirt acquired from Debtor's digging has been used for building and road foundations. Prior to the filing of its bankruptcy petition, Debtor leased trucks to haul the dirt. Debtor's lessor, however, filed a Chapter 7 bankruptcy petition and, as a consequence, Debtor lost use of the trucks. Debtor now hires independent contractors to haul the dirt.

4. Debtor assigned various causes to its need for the protection afforded by the Bankruptcy Code. Debtor notes a general decline in the construction industry and its prepetition failure to pay state and federal withholding taxes.

5. Debtor also attributes the filing of a its bankruptcy petition to prepetition defaults on two of its secured obligations. Both obligations are secured by equipment necessary for the Debtor's daily operations. Debtor cured these defaults since the filing

of its petition and proposes to service this indebtedness monthly in accordance with its respective security agreements. The proposed payment schedule will build equity in the equipment and benefit the estate's creditors.

6. Debtor proposes to pay all creditors in full despite the fact the liquidation value of Debtor's assets is insufficient to satisfy all its creditor's claims. Debtor proposes to fund its plan of reorganization by continuing its business operations. Debtor believes the local construction activity is recovering and it has enough contracts and demands for dirt to adequately fund its plan.

7. Debtor's plan establishes seven classes of creditors, three of which are impaired. Class one is comprised of administrative claimants. Debtor estimates approximately $7,500.00 represents fees and expenses for Debtor's attorney. Class one also consists of postpetition taxes owed to the Internal Revenue Service (hereafter United States) in the amount of $9,077.39. Debtor proposes to satisfy class one claimants in full in cash on the effective date of its proposed plan.

8. Class two is impaired and consists of creditors having priority claims. This class consists of § 507(a)(7) claimants and is comprised of the claim of the State of Alabama for $951.95 and the claim of the United States for $29,982.36. Debtor proposes to pay these claimants quarterly with interest at the rate provided by 26 U.S.C. § 6621. Debtor proposes to pay both claimants over a five year period: paying five (5%) percent in the first year, fifteen (15%) percent in the second year, 26.66 percent in the third year and 26.67 percent in the fourth and fifth years following confirmation of Debtor's proposed plan of reorganization.

9. Class three consists of the secured claim of CIT Financial (hereafter CIT) and is impaired. Debtor is indebted to CIT for approximately $26,000.00. Under the terms of the security agreement between Debtor and CIT, Debtor makes monthly payments of $2,812.97. Debtor proposes to continue servicing its indebtedness to CIT in the same manner. Debtor's final payment to CIT will be made in August of 1990.

10. Class four consists of the secured claim of Beard Equipment Company (hereafter Beard). Beard is owed $4,456.86. Debtor proposes to continue making monthly payments of $931.00 in accordance with the security agreement executed on June 3, 1987. Under the terms of this security agreement, Debtor will pay Beard $931.00 a month, with the last payment coming due on June 1, 1990.

11. Class five consists of the secured claim of Space Master International (hereafter Space Master). Debtor leased a mobile home from Space Master which is used as an office. Under the terms of the lease, Debtor makes monthly payments of $125.00. Debtor is indebted to Space Master for $1,941.00. Debtor proposes to make monthly payments of $125.00 until the lease expires. Thereafter, Debtor will remain in possession of the mobile home and make monthly payments to Space Master in the same amount.

12. Class six consists of the claim of Associates Finance (hereafter Associates) for $49,000.00. Associates has a mortgage on Debtor's place of business. Debtor proposes to pay Associates monthly according to the terms of the promissory note it delivered to Associates. Debtor's monthly payments to Associates equal $915.58.

13. Class seven is comprised of Debtor's unsecured creditors and is impaired. The total amount of Debtor's unsecured indebtedness is $25,957.52. Debtor proposes to pay its unsecured creditors in full, with interest, with quarterly payments over a five year period. Debtor proposes to pay five (5%) percent of each claim in the first year, fifteen (15%) percent of each claim in the second year, 26.66 percent of each claim in the third year and 26.67 percent of each claim in the fourth and fifth years following confirmation of its proposed plan of reorganization.

14. Class two, class three and class seven are impaired under Debtor's proposed plan of reorganization. Class two is comprised of the prepetition claims of the State of Alabama and the United States. The

State of Alabama did not vote on Debtor's proposed plan of reorganization. However, the United States, whose claim comprises approximately ninety-seven (97%) percent of class two, has rejected Debtor's proposed plan of reorganization. Class three consists solely of the secured claim of CIT. CIT has accepted the plan proposed by Debtor. Class seven is comprised of Debtor's unsecured creditors. All the claimants in class seven who submitted ballots voted in favor of the plan.

15. The United States does not contend Debtor's Chapter 11 petition was filed for any illicit purpose. Nor does the United States contend that Debtor's plan was not proposed in good faith. Rather, the United States is concerned that because *"deferred cash payments"* is not defined by the Bankruptcy Code, a broad construction of *"deferred cash payments"* may enable future proponents of plans of reorganization to use § 1129(a)(9)(C) as a means of realigning the scheme of priorities to the detriment of § 507(a) creditors.

16. All payments made or promised by Debtor in its proposed plan of reorganization have been fully disclosed to the Court and are reasonable or, if to be fixed after confirmation of the proposed plan of reorganization, will be subject to the approval of the Court.

17. The Court finds Debtor's petition under Chapter 11 was filed in good faith and that Debtor proposed its plan of reorganization in good faith and not by any means *forbidden by law.* The Court also finds that Debtor's proposed treatment of the United States' claim for prepetition taxes is fair and equitable.

18. The plan of reorganization filed on June 27, 1989, has been accepted in writing by all creditors whose acceptances are required by law with the exception of the United States. Therefore, the applicable provisions of title 11 have been complied with except 11 U.S.C. § 1129(a)(8). The terms of the plan of reorganization proposed by Debtor, however, comply with 11 U.S.C. § 1129(b).

**1.** Section 1129(a)(3) requires that a plan be

## CONCLUSIONS OF LAW

### I

Section 1129 governs confirmation of a proposed plan of reorganization. The court is directed to confirm a proposed plan of reorganization if it complies with all the applicable requirements of 11 U.S.C. § 1129(a). If, however, the requirement of § 1129(a)(8), which requires acceptance of the proposed plan by all impaired classes, is not met, the court may still confirm the proposed plan if it complies with § 1129(b) and the remaining applicable requirements of § 1129(a). Accordingly, since the United States has submitted a ballot rejecting Debtor's proposed plan of reorganization, the Court must determine whether Debtor's proposed plan has met these requirements.

The so-called *cramdown* provision of the Bankruptcy Code is contained in § 1129(b)(1). Under § 1129(b)(1), with respect to each impaired class that has not accepted the plan, the proposed plan must be fair and equitable and must not discriminate unfairly. Debtor proposes to satisfy the United States' claim by paying the allowed amount of the claim with interest as provided for by 26 U.S.C. § 6621. This proposed treatment takes into account the time value of money and will enable the United States to receive property of a value, as of the effective date of the proposed plan, equal to the amount of its allowed claim. Debtor's proposed treatment of the United States' claim is, therefore, fair and equitable within the meaning of 11 U.S.C. § 1129(b)(2)(B)(i). Further, the proposed plan does not discriminate unfairly against the United States. Therefore, Debtor's proposed plan complies with § 1129(b).

### II.

The United States does not contend, nor do the surrounding circumstances indicate, that Debtor did not file its Chapter 11 petition or propose its plan of reorganization in good faith.[1] Debtor insists it filed

"proposed in good faith and not by any means

its bankruptcy petition for several reasons, none of which evinces a lack of good faith on its part.[2] One reason was the bankruptcy of the lessor who leased the trucks used by the Debtor to haul dirt. Debtor's lease was rejected, consequently, it lost use of the trucks. The Debtor alleviated this problem, however, by hiring subcontractors to haul the dirt.

Also prior to filing its petition, Debtor was delinquent on two of its secured obligations: Beard and CIT. These obligations are secured by equipment necessary for Debtor's daily operations and, thus, vital to the funding of its proposed plan of reorganization. Debtor proposes to pay Beard and CIT (as well as its other secured creditors) in accordance with its respective contractual obligations. Debtor is indebted to Beard for $4456.86 and is making monthly payments of $931.00. The last payment to Beard will come due on June 1, 1990. Debtor is also servicing its indebtedness to CIT monthly. Debtor is making monthly payments of $2812.97 and will make its final payment to CIT in August, 1990. Thus, by the last calendar quarter of 1990,

Debtor will have an additional $3,743.97 a month to fund its plan and sustain operations.

Another problem precipitating Debtor's need for the protection afforded by the Bankruptcy Code, is its prepetition tax liability to the United States. Although it has been able to make payments on its postpetition tax liability, Debtor's prepetition indebtedness to the United States is $29,982.36. Debtor has assigned the prepetition claim of the United States to class two with the State of Alabama's claim. Debtor proposes to pay both claimants in the same manner: graduated quarterly payments, with interest, for five years following confirmation of its proposed plan. In the first year Debtor will pay five (5%) percent of the allowed claims, in the second year debtor will pay fifteen (15%) percent of the allowed claims, in the third year Debtor will pay 26.66 percent of the allowed claims and in the fourth and fifth years following confirmation, Debtor will pay 26.67 percent of the allowed claims. The unsecured creditors, whose claims comprise class seven,

forbidden by law." In determining whether a plan of reorganization has been proposed in good faith, the court must determine whether a "plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 843 F.2d 636, 649 (2nd Cir.1988) (quoting *In re Koelbl,* 751 F.2d 137, 139 (2nd Cir.1984)). Because *good faith* is an elastic concept, this determination must be made in light of the surrounding circumstances of each case. See *Matter of Jasik,* 727 F.2d 1379, 1383 (5th Cir.1984).

The Court concludes, based on the surrounding circumstances, that Debtor's plan of reorganization was proposed in good faith. Debtor was faced with prepetition defaults on two of its secured obligations, the collateral for which is vital to its daily operations, and was delinquent in its obligation to the United States for prepetition taxes. In addition to suffering from a general decline in the local construction industry, Debtor was unable to meet some of its contractual demands for dirt because the lessor of the trucks it used to haul dirt filed for bankruptcy and the lease was subsequently rejected.

While the United States is disgruntled with Debtor's proposed treatment of its claim, the plan, as a whole, is sound and a logical means of rehabilitating Debtor. That Debtor proposed the plan with honesty and good intentions is bolstered by the fact that Debtor proposes in its

plan of reorganization to pay its unsecured creditors in full, whereas the assets presently available for distribution are insufficient to provide more than a marginal distribution to these creditors.

2. In *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988) the Court of Appeals for the Eleventh Circuit recognized there is no fixed test for determining whether a petition has been filed in good faith. However, the court noted that "courts may consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of ... creditors to enforce their rights.'" *Phoenix Piccadilly,* 849 F.2d at 1394 (quoting *In re Albany Partners Ltd.,* 749 F.2d 670, 674 (11th Cir.1984)).

The surrounding circumstances do not support the conclusion that Debtor filed its petition to frustrate the efforts of its creditors to enforce their claims or to abuse the reorganization process. Rather, Debtor is associated with an industry which has suffered in the recent past but is beginning to experience a recovery. Debtor is attempting to weather the storm and, in so doing, has submitted the proposed plan of reorganization with the intention of staying in business and satisfying in full the claims of its creditors.

will have their claims satisfied in the same manner as the treatment of class two claimants.

Concerned that a broad construction of 11 U.S.C. § 1129(a)(9)(C) (1988 ed.) [3] may deprive the taxing authorities of the priority status accorded to § 507(a) creditors and fearing such a construction will force the United States to finance Debtor's proposed plan of reorganization, the United States objects to this treatment.[4] In pertinent part § 1129(a) provides:

> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment, the plan provides—
>
> (C) with respect to a claim of the kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim *deferred cash payments*, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9)(C) (emphasis added).

Nowhere in the Bankruptcy Code is *deferred cash payments* defined. Relying on *Matter of Mason and Dixon Lines, Inc.,* 71 B.R. 300 (Bankr.M.D.N.C.1987) and its progeny,[5] the United States espouses the position that § 1129(a)(9)(C) requires equal monthly payments. In *Mason and Dixon,* the court required the debtor to service its indebtedness to the United States for prepetition taxes with equal monthly payments, rather than annually as proposed.[6] Because Debtor's proposed treatment of the United States' claim for prepetition taxes is clearly distinguishable from the treatment proposed by the debtor in *Mason and Dixon* and because the Court finds no support for such a restrictive construction of § 1129(a)(9)(C),[7] the Court respectfully declines the United States' invitation to fol-

**3.** The legislative history of § 1129(a)(9)(C) refers to claims of the kind specified in § 507(a)(6). See *infra* note 7. It is important to note that when the Bankruptcy Code was enacted, § 1129(a)(9)(C) provided "with respect to a claim of a kind specified in section 507(a)(6) ..." Section 507(a), however, was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 to include the present § 507(a)(5). Consequently, § 507(a)(6) was redesignated to § 507(a)(7) and § 1129(a)(9)(C) was amended accordingly. See Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986, § 283(v)(3), Pub.L. No. 99–554, 100 Stat. 3088. Thus, the types of claims referred to in the underlying history are the same, it is only their designation that is different.

**4.** The United States is not concerned with the proposed treatment of the unsecured creditors in class seven. Instead, the United States suggests that because Debtor is reducing its secured indebtedness monthly, the United States is entitled to the same treatment. In *Federal Deposit Insurance Corp. v. Jenkins,* 888 F.2d 1537 (11th Cir.1989), the Court of Appeals for the Eleventh Circuit held "[s]ecured creditors get first priority according to their rank and the unsecured creditors follow." *Jenkins,* 888 F.2d at 1545 (quoting *Matter of Perimeter Park Investment Associates, Ltd.,* 697 F.2d 945, 952 n. 8 (11th Cir.1983)). Thus, Debtor is not required to treat the United States in the same manner as the secured creditors and, further, the scheme of priorities established by § 507(a) is not jeopardized by Debtor's proposed treatment.

**5.** See *In re Arrow Air, Inc.,* 89 B.R. 961, 965 (Bankr.S.D.Fla.1988), *rev'd,* 101 B.R. 332 (S.D. Fla.1989); *In re Inventive Packaging Corp.,* 81 B.R. 74, 79 (Bankr.D.Colo.1987); *In re Mahoney,* 80 B.R. 197, 200 (Bankr.S.D.Cal.1987).

**6.** In *Mason and Dixon,* the debtor proposed to satisfy its obligation to the United States for prepetition taxes by making annual payments for six years. There, the debtor proposed to pay interest only in the first five years following confirmation and then in the sixth year, make a balloon payment, which consisted of the allowed amount of the sovereign's claim. The United States likened the debtor's proposed treatment to a forced loan and Judge Reynolds agreed.

**7.** Common usage of *deferred cash payments* suggests a flexible, rather than restrictive approach to determine whether a proposed plan of reorganization complies with § 1129(a)(9)(C). Further, the legislative history underlying § 1129(a)(9)(C) does not indicate Congress intended that § 507(a)(7) creditors have their claims serviced solely on a monthly basis. Instead, Congress focused its concern on providing the debtor in possession with a breathing spell while contemporaneously ensuring that those creditors whose claims are proposed to be paid over the six year period following the date of assessment receive the present value of their claims. See 124 Cong.Rec. 34006 (1978), reprinted in 1978 U.S.Code Cong. & Admin. News at 5787, 6542.

low courts interpreting § 1129(a)(9)(C) as requiring equal monthly payments.

Whether a proposed plan complies with § 1129(a)(9)(C) must be determined by the facts of each case viewing all the surrounding circumstances. Here, the proposed plan of reorganization is a feasible means of rehabilitating the Debtor. In light of the surrounding circumstances, the proposed treatment provides the potential for a distribution to the estate's creditors, including the United States, greater than the distribution available if Debtor's assets were liquidated.

Considering the proposed treatment of its secured creditors, namely Beard and CIT, after the first year following confirmation Debtor will have more funds available to pay the United States. Moreover, Debtor will have the equipment securing the claims of Beard and CIT unencumbered. Therefore, reluctantly assuming Debtor will be unable to fulfill the terms of its proposed plan of reorganization, the proposed payment scheme enables Debtor to build equity in this equipment which, in turn, will increase the distribution available to the United States and creditors having the same and lower priority.

It would be counterproductive to require the Debtor to service its indebtedness to the United States monthly or with equal quarterly payments. If the Court were to require Debtor to make equal monthly payments to the United States on its prepetition claim, Debtor would quite likely be in a position similar to its prepetition status. If Debtor were to become unable to service its secured obligations, its operations may cease and the distribution available to all creditors including the United States would be substantially less than the potential distribution available under the proposed plan of reorganization.

### CONCLUSION

The United States is concerned a broad construction of § 1129(a)(9)(C) will deprive it of its priority status and force it to finance Debtor's proposed plan of reorganization. Conceivably, a proponent of a plan of reorganization could skillfully draft a plan so as to deprive a § 507(a) creditor of its priority status. However, by servicing its secured indebtedness monthly and its priority and unsecured indebtedness quarterly by a graduated schedule, Debtor's proposed treatment does not impose such a risk. Furthermore, even though the United States is receiving less than an equal periodic payment in the initial stages of the plan while the secured creditors are receiving the full contractual amount, the proposed treatment benefits the United States by increasing Debtor's assets.

Debtor's prospects of reorganizing are favorable and its creditors have an interest in seeing the proposed plan of reorganization reach fruition. The proposed treatment facilitates not only Debtor's rehabilitation, but also the United States' desire to receive the full value of its claim. By allowing Debtor to make the proposed graduated quarterly payments on its prepetition taxes, the Court does not intend to erode § 1129(a)(9)(C) or § 507(a). Here, however, the facts and circumstances indicate the proposed treatment is a feasible manner of rehabilitating the Debtor without derogating the interests or rights of any of its creditors.

Therefore, the Court concludes Debtor's proposed treatment of the prepetition claim of the United States and the prepetition claim of the State of Alabama complies with § 1129(a)(9)(C). Accordingly, since Debtor's proposed plan of reorganization complies with § 1129(b) and has met all the applicable requirements of § 1129(a) with the exception of § 1129(a)(8), Debtor's proposed plan of reorganization is due to be confirmed.