**In re VOLLE ELECTRIC, INC., Debtor.**

**Bankruptcy No. 90–70987.**

United States Bankruptcy Court,
C.D. Illinois.

Oct. 3, 1991.

Barry O. Hines, Bernard G. Segatto, III, Springfield, Ill., for DIP.

Michael Bitner, Sp. Asst., U.S. Atty., James A. Lewis, Asst. U.S. Atty., Springfield, Ill., for U.S.

Michael Myers, Springfield, Ill., for Marine Bank.

## OPINION

LARRY L. LESSEN, Chief Judge.

The issue before the Court is whether the reference to "deferred cash payments" in 11 U.S.C. § 1129(a)(9)(C) requires equal monthly payments or, as proposed in this case, whether the statute permits regular monthly payments which substantially reduce the principal but leave a balloon payment at the end of the plan.

Dale Schäfer was an electrician; Gary Wagner was a bookkeeper and office manager. In 1985, they joined together to form the Debtor, Volle Electric, Inc., an Illinois corporation, and purchased the business of Volle Electric Service Co. from its retiring owner. Working as a subcontractor, the Debtor provides traffic light installation and other traffic control systems on streets and highways. The Debtor also provides street and highway lighting facility installations and wiring. Business is seasonal, with the majority of the work performed from March through October. The Debtor employs up to seventeen (17) people, most of them as electricians.

From the inception of the business, Mr. Wagner was in charge of the financial operations and Mr. Schafer was in charge of field operations. After giving his two week notice, Mr. Wagner terminated his employment with the Debtor on December 16, 1988. Two days before leaving, Mr. Wagner informed Mr. Schafer that no employment taxes had been paid for the 1988 calendar year. Mr. Schafer subsequently discovered that Form 941 quarterly reports had not been filed for the first three quarters of 1988. Mr. Schafer filed the necessary reports in early 1989.

Following the filing of the quarterly reports, the Debtor advised the Internal Revenue Service (IRS) of the predicament the Debtor was left in by Mr. Wagner's actions. Negotiations between the Debtor and the IRS ensued wherein the Debtor sought an installment payout of the taxes owing to the IRS. When these negotiations failed, the IRS issued a levy on the Debtor's bank account and threatened the Debtor with the seizure of all corporate assets. The Debtor responded by filing its petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

The Debtor's reorganization plan provided for the full payment of administration

claims, trustee fees and other priority claims. The plan further provided that prepetition taxes with prepetition penalty reduced by 85% would be paid by monthly payment based on 8% interest and a ten year amortization with a four year balloon payment. As applied to the IRS, the plan provided that the IRS' $67,795 lien on accounts receivable would be paid by 47 monthly payments of $822.54 with a balloon payment of $47,735.74 due on the last day of the 48th month. The remaining IRS prepetition tax claim of $70,544 was to be reduced by $26,432 (85% of the prepetition penalty) and paid by 47 monthly payments of $535.20 with a balloon payment of $31,-060.10 due on the last day of the 48th month. The Debtor's primary secured creditor was to be paid by monthly payments based on 8% interest and a ten year amortization with a four year balloon payment. Unsecured claims of less than $250 were to be paid in full; unsecured claims of more than $250 were to be reduced by 50% and paid by semi-annual payments with no interest over a five year period.

A confirmation hearing was held on May 7, 1991. The Illinois Department of Employment Security and Illinois Department of Revenue withdrew their objections to the reorganization plan provided they received 11% interest on their claim. The Court subsequently approved such a stipulation. The only remaining objections were filed by the IRS. The IRS' objections to the 8% interest and a lack of continuing adequate protection for its lien interests in the Debtor's accounts receivable were resolved by a stipulation between the parties wherein the Debtor agreed to an 11% interest rate and a replacement lien on postpetition cash and cash equivalents, inventory, accounts receivable and contract rights. The Court approved this stipulation. The IRS' objection to the feasibility of the plan was overruled by the Court. The Court found that the Debtor had a good name in the industry, was current with its tax payments, had increased its sales and profit, and had satisfied its largest secured creditor. Although the Court recognized that nothing was a sure thing, the Court found that there was no evidence to indicate that the plan was not feasible. Finally, the Court rejected the IRS' objection that the plan failed to meet the requirements of 11 U.S.C. § 1129(a)(9)(C) in that the plan did not propose to pay the priority tax claims in equal monthly installments. The IRS' position on this issue was not supported by the plain language of the statute or by the equities of the case. Accordingly, the Court confirmed the plan over the objection of the IRS.

Presently before the Court is the IRS' motion to reconsider. The IRS motion is limited to the Court's ruling on the § 1129(a)(9)(C) objection.

11 U.S.C. § 1129(a)(9)(C) provides as follows:

> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment, the plan provides—
>
> (C) with respect to a claim of the kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

The term "deferred cash payments" is not defined in the Bankruptcy Code. The IRS interprets this provision as requiring equal monthly payments, and relies on *In re Mason and Dixon Lines, Inc.*, 71 B.R. 300 (Bankr.M.D.N.C.1987) in support of this position. In *Mason and Dixon*, the debtor proposed to satisfy its prepetition tax obligation to the IRS by making annual payments for six years. The debtor proposed to pay interest only for the first five years and then make a balloon payment at the end of the sixth year consisting of the amount of the proof of claim plus yearly interest. The Court found that this proposal would result in a forced loan to the debtor of the full principal for six years and that the IRS would incur the risk of no payment of principal for the full six year period. Accordingly, the Court held that § 1129(a)(9)(C) required 72 equal monthly payments of principal and interest.

Based upon *Mason and Dixon,* the IRS argues that equal monthly payments are required in this case. *Mason and Dixon,* however, recognized that each case must be evaluated on its own facts and circumstances:

[T]he "deferred cash payments" in Bankruptcy Code section 1129(a)(9)(C) means periodic payments, the interval of which is determined by balancing the circumstances of the debtor with the reasonable right of the creditor to receive prompt payment of its claim. Since the normal repayment schedule for a loan is monthly and monthly payments are routinely expected in this District, considering all the facts and circumstances in this case, there are no special or unusual facts which would constitute grounds to vary the normal payment interval. Therefore, in this case, the Court determines that a reasonable interval is monthly.

*Mason and Dixon,* 71 B.R. at 303. Faced with the factual situation presented in *Mason and Dixon,* this Court would also not approve a plan which only paid interest for five years and provided for a balloon payment at the end. This case, however, presents an entirely different factual situation because the Debtor proposes to make regular monthly payments which substantially reduce the principal.

The other cases relied on by the IRS are equally inapposite to the case at bar. In *In re Mahoney,* 80 B.R. 197, 200 (Bankr. S.D.Cal.1987), the debtor proposed to pay his priority tax claims in a lump sum at the end of his five year plan. Since the debtor failed to present evidence of special facts or circumstances which would justify not making periodic payments at a reasonable interval, the Court found that monthly payments to the IRS were required. This Court agrees with *Mahoney* that it is not permissible for a debtor to make no payments on priority tax claims for four years and then make a lump sum payment in the fifth year, but those are not the facts in this case. The Debtor in this case is making regular monthly payments which are reducing the principal owed to the IRS. *In re Inventive Packaging, Corp.,* 81 B.R. 74, 79 (Bankr.D.Colo.1987) is also distinguish-able from this case. There, the debtor proposed to pay his priority taxes on a semi-annual basis while paying his other debts on a monthly basis. The Court found no unusual circumstances to justify this disparate treatment, and ordered that the payments to the IRS be made on a monthly basis. Here, the Debtor is paying all creditors, including the IRS, on a monthly basis.

The Court believes that the most cogent and insightful discussion of § 1129(a)(9)(C) is found in *In re Snowden's Landscaping Co.,* 110 B.R. 56 (Bankr.S.D.Ala.1990). In *Snowden's,* the debtor proposed paying its secured creditors on a monthly basis and its priority and unsecured creditors on a quarterly schedule which included graduated payments. The Court found no support for the IRS' restrictive construction of § 1129(a)(9)(C) as requiring equal monthly payments:

Common usage of "deferred cash payments" suggests a flexible, rather than restrictive approach to determine whether a proposed plan of reorganization complies with § 1129(a)(9)(C). Further, the legislative history underlying § 1129(a)(9)(C) does not indicate Congress intended that § 507(a)(7) creditors have their claims services solely on a monthly basis. Instead, Congress focused its concern on providing the debtor in possession with a breathing spell while contemporaneously ensuring that those creditors whose claims are proposed to be paid over the six year period following the date of assessment receive the present value of their claims. See 124 Cong.Rec. 34006 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News at 5787, 6542.

*Snowden's,* 110 B.R. at 60, n. 7. Viewing the facts before it, the Court found the debtor's plan to be a feasible means of rehabilitating the debtor:

It would be counterproductive to require the Debtor to service its indebtedness to the United States monthly or with equal quarterly payments. If the Court were to require Debtor to make equal monthly payments to the United States on its prepetition claim, Debtor would quite

likely be in a position similar to its prepetition status. If Debtor were to become unable to service its secured obligations, its operations may cease and the distribution available to all creditors including the United States would be substantially less than the potential distribution available under the proposed plan of reorganization.

*Snowden's,* 110 B.R. at 61. Therefore, the Court confirmed the plan.

More recently, *In re Sanders Coal & Trucking, Inc.,* 129 B.R. 516 (Bankr. E.D.Tenn.1991) also rejected the *Mason and Dixon* presumption that monthly payments of principal and interest are required unless unusual facts justify a different period. Citing *Snowden's,* the court found that the term "deferred cash payments" was too broad to allow such a presumption. 129 B.R. at 520. Accordingly, the Court concluded that a Chapter 11 plan which did not propose payments on principal until the 37th month of the plan nevertheless provided for deferred cash payments on the government's unsecured priority tax claim. 129 B.R. at 520.

In this case, the Debtor's prospects for a successful reorganization are favorable and the creditors have a strong interest in seeing a confirmed plan of reorganization. The problem which caused the bankruptcy—the failure of Mr. Wagner to pay the taxes—has been identified and remedied by the departure of Mr. Wagner. The Debtor has trimmed down its business and demonstrated that it has the contracts to get the plan started. The Debtor has also demonstrated that it has the necessary contacts and good reputation in the industry to generate the contracts that will be necessary to keep the plan going. Moreover, the Debtor's liquidation analysis shows that unsecured creditors would receive nothing on their claims if the Debtor were liquidated today. Indeed, the IRS admits that if it receives just one monthly payment under the plan, then it would be better off than if there were no plan and the Debtor were liquidated. Nevertheless, the IRS is attempting to torpedo the whole plan.

The Court finds that IRS' position in this case to be incredible. There is more at stake than whatever policy or bookkeeping reasons are motivating the IRS. The prospects for a successful reorganization are favorable and the livelihoods of Mr. Schafer and his employees are dependent on a successful reorganization. These employees should not be thrown out on the street simply because the IRS insists on maintaining an unreasonable position. The major secured creditor believes the plan is feasible and in its best interests. The unsecured creditors also strongly support the plan. The plan proposes to pay the unsecured creditors 50% of their claims. Since this is 50% more than they would receive in the event of liquidation, it is not surprising that they voted overwhelmingly in favor of the plan. Thus, the equities in this case mandate a rejection of the IRS' demand for equal monthly payments.

The IRS argues that the Debtor's projected cash flow shows a cash cushion from which the Debtor could make equal monthly payments to the IRS without killing the plan. This argument places the IRS in an awkward position since it has also consistently maintained that the Debtor's plan is not feasible and that it will be unable to attain its projected cash flow. In any event, Chapters 12 and 13 of the Bankruptcy Code require a debtor to contribute all of his projected disposable income to the reorganization plan; Chapter 11 contains no such requirement. Business experts commonly cite undercapitalization as a leading factor in business failures, and this Court's 20 years of experience on the Bankruptcy bench confirms this conclusion. The Debtor has adequately explained its need for a cash reserve, and the Court finds the amount of the projected cash reserve to be reasonable under the facts in this case.

For the foregoing reasons, the IRS' motion to reconsider is denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.