In re VOLLE ELECTRIC, INC., Debtor.

**UNITED STATES of America,**

v.

**VOLLE ELECTRIC, INC.**

No. 92–3001.

United States District Court,
C.D. Illinois,
Springfield Division.

April 21, 1992.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., John V. Cardone, Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Bernard G. Segatto, III, Barry O. Hines, Springfield, Ill., for debtor.

OPINION

RICHARD MILLS, District Judge:

Bankruptcy appeal.

Reorganization plan with "deferred cash payments."

The United States, Appellant, asserts Chief Bankruptcy Judge Lessen erred in confirming the Debtor's reorganization plan for its alleged failure to comport with 11 U.S.C. § 1129(a)(9)(C). Section 1129 provides in pertinent part:

(a) The court shall confirm a plan only if all of the following requirements are met:

\* \* \* \* \* \*

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

\* \* \* \* \* \*

(C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim *deferred cash payments, over a period not exceeding six years after the date of assessment of such claim,* of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9)(C) (emphasis ours).

Judge Lessen correctly defined the issue in this dispute as "whether the reference to 'deferred cash payments' in 11 U.S.C. § 1129(a)(9)(C) ... permits regular monthly payments which substantially reduce the principal but leave a balloon payment at the end of the plan." *In re Volle Elec., Inc.,* 132 B.R. 365, 365 (Bankr.C.D.Ill.1991). Noting "deferred cash payments" are not defined in the Bankruptcy Code, Judge Lessen reached the conclusion of law that § 1129(a)(9)(C) permitted the reorganization plan proposed by the debtor. *In re Volle Elec., Inc.,* 132 B.R. at 366–67. Accordingly, his decision to confirm the proposed plan warrants de novo review by this Court. *See In re Newman,* 903 F.2d 1150, 1152 (7th Cir.1990); Bankruptcy Rule 8013.

Although ultimately agreeing with Judge Lessen's conclusion of law, this Court renders its opinion to expound on the novel issue presented. *See Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1210 (7th Cir.), *cert.* *denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984) (Rather than adopting a bankruptcy court's opinion "[i]t is preferable for a district court to write separately to express its views on complex and novel issues....").

## I.  Facts

In 1985, Dale Schafer, an electrician, and Gary Wagner, a bookkeeper and office manager, formed Volle Electric, Inc. Combining resources, the two men purchased Volle Electric Service Co. from its retiring owner and began installing traffic control systems. From the corporation's inception, Mr. Wagner handled the office and financial matters of the business while Mr. Schafer was in charge of electrical operations.

On approximately December 16, 1988, Mr. Wagner informed Mr. Schafer that employment taxes for the 1988 calendar year were not paid and abruptly terminated his relationship with the business, leaving Mr. Schafer to sort out the mess. Subsequently, Schafer discovered the quarterly reports for 1988 were delinquent and filed the necessary forms with the Internal Revenue Service (IRS) in early 1989. Schafer later advised the IRS of the predicament caused by Wagner's conduct and began negotiations to satisfy the existing tax obligation.

Following negotiation, the IRS and Mr. Schafer could not agree on a payment plan for the outstanding liability. The IRS then issued a levy on Volle Electric's bank account and threatened to seize all corporate assets. Volle Electric responded by filing for bankruptcy pursuant to Chapter 11.

In its reorganization plan, Volle Electric proposed to pay an unsecured tax claim of $44,112 through 47 monthly payments of $535.20 and a balloon payment of $31,060.10 due on the last day of the 48th month. This plan was based on an interest rate of 8 percent amortized over 10 years. The IRS objected to the plan expressing concerns over inadequate protection of its lien interests. Volle Electric compromised by raising the interest rate to 11 percent, increasing its monthly payments to $607.64, and by providing the IRS with a replacement lien on post-petition cash and

cash equivalents, inventory, accounts receivable and contract rights. Rejecting the IRS's objections that the plan failed to meet the guidelines of § 1129(a)(9)(C), the bankruptcy court confirmed the plan. Following an IRS motion to reconsider, the bankruptcy court affirmed its earlier decision on October 3, 1991.

The United States represents the IRS's interests on appeal.

## II. Analysis

■■■ While this Court recognizes its obligation to review de novo the bankruptcy court's conclusions of law, great deference is warranted the factual findings considering the Bankruptcy Judge Lessen's 20 year tenure on the bankruptcy bench. *See In re Newman*, 903 F.2d at 1152; *Calder v. Camp Grove State Bank*, 892 F.2d 629, 631 (7th Cir.1990). These factual findings effectively control this Court's holding as each plan of reorganization is necessarily dependent upon the particular circumstances of the individual debtor and its creditors.

■■■ "Whether a proposed plan complies with § 1129(a)(9)(C) must be determined by the facts of each case viewing all the surrounding circumstances." *In re Snowden's Landscaping Co.*, 110 B.R. 56, 61 (Bankr.S.D.Ala.1990). More specifically, the language of § 1129(a)(9)(C) regarding " 'deferred cash payments' [requires the debtor to make] ... periodic payments, the interval of which is determined by balancing the circumstances of the debtor with the reasonable right of the creditor to receive prompt payment of its claim." *In re Mason and Dixon Lines, Inc.*, 71 B.R. 300, 303 (Bankr.M.D.N.C.1987). Therefore, the determination of whether or not Volle Electric's plan complied with § 1129(a)(9)(C) is a fact intensive inquiry.

Based on *In re Snowden's Landscaping Co.* and *In re Mason and Dixon Lines, Inc.*, a court should balance a debtor's interest in rehabilitation with the government's interest in receiving prompt payment of employment taxes. The bankruptcy court undertook such an inquiry, finding Volle Electric "had a good name in the industry, was current with its [other] tax

payments, had increased sales and profit, and had satisfied its largest secured creditor." *In re Volle Elec., Inc.*, 132 B.R. at 366. The bankruptcy court further found that:

> prospects for a successful reorganization are favorable.... The problem which caused the bankruptcy—the failure of Mr. Wagner to pay the taxes—has been identified and remedied by the departure of Mr. Wagner. The Debtor has trimmed down its business and demonstrated that it has the contracts to get the plan started. The Debtor has also demonstrated that it has the necessary contacts and good reputation in the industry to generate the contracts that will be necessary to keep the plan going.

*In re Volle Elec., Inc.*, 132 B.R. at 368. While considering the future of Volle Electric, the bankruptcy court did not forget the interest of the government.

The government is entitled to "some degree of financial certitude that its [tax] claim will be paid promptly and in full under the plan of reorganization." *In re Inventive Packaging Corp.*, 81 B.R. 74, 79 (Bankr.D.Colo.1987). The record indicates the bankruptcy court endeavored to provide the United States with "some degree of financial certitude" that its claim would be satisfied. Volle Electric agreed to increase the interest on its obligation from 8 percent to 11 percent. *In re Volle Elec., Inc.*, 132 B.R. at 366. Additionally, Volle Electric stipulated existing liens would be replaced by a similar interest in its postpetition assets and contract rights. *In re Volle Elec., Inc.*, 132 B.R. at 366. Presumably, the bankruptcy court approved these stipulations after considering both the Debtor's interest in preserving the business and the United States' interest in financial certitude. However, these two interests are not always in direct conflict.

As evinced by its opinion, the bankruptcy court found the prospects for Volle Electric fulfilling its tax obligation were best served by 47 monthly payments followed by a single balloon payment in month 48. The government interest asserted is not contrary to that of the Debtor; rather,

both parties' interests are common in that each requires Volle Electric to succeed. This Court is hesitant to take any action that might thwart the ongoing operations that provide resources necessary for Volle Electric to satisfy its creditors.

Forcing the Debtor to pay greater amounts of principal in the early stages of reorganization could jeopardize the government's claim. If the Court were to require equal monthly payments over the entire plan, Volle Electric would be forced into nearly the same position as it was immediately prior to bankruptcy. Certainly, a pre-bankruptcy condition would not provide the government with any degree of financial certitude. "Moreover, [Volle Electric's] liquidation analysis shows that unsecured creditors would receive nothing on their claims if [it] were liquidated today. Indeed, the IRS admits that if it receives just one monthly payment under the plan, then it would be better off than if there were no plan and [Volle Electric] were liquidated." *In re Volle Elec., Inc.*, 132 B.R. at 368.

As an unsecured creditor, the United States persistent attempts to accelerate payments of principal are perplexing. The United States' position is unique in that virtually all other secured and unsecured creditors believe the plan is in everyone's best interests and strongly support its confirmation. *In re Volle Elec., Inc.*, 132 B.R. at 368. In effect, the United States seeks to bite off the hand that feeds it by continuing to protest a reorganization plan that provides the United States' with its chance of satisfying its claim. Ignoring the practicality of the reorganization plan, the United States argues for a mechanical and strained interpretation of § 1129(a)(9)(C).

In short, the United States contends § 1129(a)(9)(C) mandates what it describes as "normal monthly payments" unless "special or unusual facts ... constitute grounds for varying from a normal repayment schedule." More specifically, the United States defines a "normal repayment schedule" as one "in which principal payments are spread throughout the duration of the repayment period instead of being back-loaded into a balloon payment." This Court is not aware of any section of the Bankruptcy Code that uses the term "normal monthly payments." As the bankruptcy court accurately stated, the United States' "position on this issue [is] not supported by the plain language of the statute." *In re Volle Elec., Inc.*, 132 B.R. at 366. "[N]either the statute nor any controlling authority requires that ... payments be made in equal monthly installments from the beginning of the plan[ ]." *In re Ferguson*, 134 B.R. 689, 690 (Bankr. S.D.Fla.1991) (*en banc* consideration of priority tax claims in Chapter 13 proceeding).

The United States relies extensively on *In re Mason and Dixon Lines, Inc.*, 71 B.R. 300 (Bankr.M.D.N.C.1987) and *In re Mahoney*, 80 B.R. 197 (Bankr.S.D.Cal. 1987), for support of its alleged right to receive normal monthly payments. Neither of these cases persuades this Court that the United States' interpretation of section 1129(a)(9)(C) is correct.

In *In re Mason and Dixon Lines, Inc.*, the debtor proposed to pay only interest on its tax debt over the lifetime of the plan followed by payment of the entire principal in the sixth year. Believing the plan placed the debtor in an "extremely favorable position ... [while leaving] the Internal Revenue Service at great risk," the court rejected the proposal. *In re Mason and Dixon Lines, Inc.*, 71 B.R. at 302. Following the reasoning of *In re Mason and Dixon Lines, Inc.*, the court in *In re Mahoney* denied confirmation a debtor's proposal that called for priority tax claims being satisfied through a lump sum payment during the last month of the plan. 80 B.R. at 200. Assuming, *arguendo*, that these cases are correctly decided, the instant case is easily distinguishable.

Both *In re Mason and Dixon Lines, Inc.* and *In re Mahoney* involved proposals that allowed the debtor to postpone payment of the *entire* principal until the last possible moment. Volle Electric is not seeking to forestall its payment of principal until the expiration of the plan. Rather, its first 47 monthly payments represent interest on the outstanding debt and a substantial por-

tion of the principal due. The United States argues this distinction is insignificant as both cases "involved substantial balloon payments at the end of the plan" similar to the one proposed by Volle Electric. It encourages this Court to follow "the reasoning set forth by the courts in *Mason and Dixon Lines, Inc.* and *Mahoney....*" *Id.*

This Court must reject the United States' assertion that Volle Electric's periodic principal payments do not distinguish this case from *Mason and Dixon Lines, Inc.* and *In re Mahoney*. Periodic principal payments display Volle Electric's commitment to fulfilling its obligations. More importantly, the United States concedes that after receiving the first monthly payment it will be better off than if the Debtor were forced to liquidate immediately. The payment schedule included in the reorganization plan must be judged in light of the fact that a lack of working capital could jeopardize the corporation's ability to continue operations as a subcontractor, apparently its significant source of revenue. Therefore, the particular circumstances of this case adequately justify the delayed payment of a large portion of the principal.

This Court does not accept the United States' argument that the reasoning employed in *In re Mason and Dixon Lines, Inc.* and *In re Mahoney* should be followed in this case. The *In re Mason and Dixon Lines, Inc.* court reasoned it had "routinely interpreted section 1129(a)(9)(C) to require ... equal monthly payments" and there appeared "to be no reason to change this policy or interpretation." *In re Mason and Dixon Lines, Inc.*, 71 B.R. at 302. *In re Mahoney* simply followed suit in finding *In re Mason and Dixon Lines, Inc.* persuasive. *In re Mahoney*, 80 B.R. at 200. While these cases may be correctly decided, in this case there is a reason to reject the "routine" interpretation of section 1129(a)(9)(C) as requiring "equal monthly payments." The proposed requirement is not to be found in the language of the statute and, under the facts of this case, would not give due consideration to the interrelated objectives of reorganization—

business preservation and creditor satisfaction.

In *In re Snowden's Landscaping Co.* the court held the debtor could pay its tax claims in graduated quarterly payments. Under the confirmed plan, the debtor paid 5 percent of the claims in the first year, 15 percent in the second year, and approximately 27 percent in each of the remaining three years. The debtor, an excavation firm, sought to fund its reorganization by continuing operations, believing construction activity and its current contracts indicated a bright future. *In re Snowden's Landscaping Co.*, 110 B.R. at 57. Like the debtor in *In re Snowden's Landscaping Co.*, Volle Electric needs an adequate cash flow to continue operating.

Realizing "undercapitalization [is] a leading factor in business failures," the bankruptcy court confirmed a plan that met the needs of both Volle Electric and its creditors. *In re Volle Elec., Inc.*, 132 B.R. at 368. The "plan of reorganization is a feasible means of rehabilitating [Volle Electric]. In light of the surrounding circumstances, the proposed treatment provides the potential for a distribution to [Volle Electric's] creditors, including the United States, greater than the distribution available if [its] assets were liquidated." *In re Snowden's Landscaping Co.*, 110 B.R. at 61. Therefore, this Court must affirm the bankruptcy court's confirmation of the plan.

### III. Conclusion

The objectives of Chapter 11 and the interests of the United States are not served by endangering the continued operations of Volle Electric. Indeed, the ability of Volle Electric to continue its operations provides the best prospect for the satisfaction of Volle's debt to the United States. This Court must reject the United States' asseveration that section 1129(a)(9)(C) demands equal monthly payments of principal and interest over the entire course of the plan. The bankruptcy court's interpretation of the Bankruptcy Code to allow approval of the reorganization plan was a proper conclusion of law. Therefore, this Court affirms the plan's confirmation as it

represents an accommodation of the interrelated objectives of reorganization—business preservation and creditor satisfaction.

*Ergo*, the bankruptcy court's decision to confirm the Debtor's plan of reorganization is AFFIRMED.