In re Gerald and Cynthia
**HARKAI, Debtors.**

Bankruptcy No. 86–04564–R.

United States Bankruptcy Court,
E.D. Michigan.

Jan. 21, 1987.

Kim Capello, UAW–Ford Legal Services, Dearborn, Mich., for debtors.

Edward Cutlip, Detroit, Mich., for creditor.

## SUPPLEMENTAL MEMORANDUM OPINION

STEVEN W. RHODES, Bankruptcy Judge.

### I.

This matter is before the Court[1] on an objection to confirmation of the debtor's plan filed by the Massachusetts Bay Insurance Company. This creditor contends that the plan was not filed in good faith as required by 11 U.S.C. § 1325(a)(3). It has filed a proof of claim in an amount in excess of $9,000 resulting from an obligation on a bond upon which it was required to pay as a result of Cynthia Harkai's failure to account for estate funds and embezzlement of those funds; she had been the conservator of an estate for the benefit of her son.

The debtors contend that the obligation to this creditor is $3,000, because $6,000 from the estate was properly spent by Mrs. Harkai for her son. The debtors further contend that the bankruptcy was filed in good faith.

Thus, there are two issues before the Court—the amount of the debt and whether the petition was filed in good faith.

### II.

At the hearing, the evidence established that in February of 1983, Mrs. Harkai was appointed conservator of her son's estate, which consisted of approximately $8,500 received on a personal injury settlement. At that time, she received no specific instructions as to her fiduciary obligations. Generally she knew that she was required to file periodic reports and that the money was to be spent, if at all, solely for her son's benefit. In connection with her appointment, a bond was arranged through the Massachusetts Bay Insurance Company in the amount of $9,000. Mrs. Harkai put the money from the settlement in a certificate of deposit in a bank.

In February of 1984, Mrs. Harkai withdrew the money from the certificate of deposit; this resulted in a $400 penalty. In the next several months, she spent the full settlement fund. Her testimony reflects that she spent $4400 on a used car for her family. The balance of the fund was spent for her son on things he requested, including $1,000 on a computer, $630 on a video cassette recorder, $350 on a television, $200 on a bicycle, $500 on clothes, $500 on a trip to Toronto, and $300 on computer games. The sum of these expenditures is approximately $7,880, which accounts for approximately all of the money. Mrs. Harkai testified that she knew that spending her son's money for a family car was wrong, but she believed that the balance of the expenditures was appropriate because it was for the son's benefit and pursuant to his wishes.

There was an accounting due under applicable Probate Court rules on July 15,

---

**1.** This opinion supplements an oral opinion given in Court at the conclusion of the hearing on January 14, 1987.

1984, but Mrs. Harkai did not file it. On February 25, 1985, the Wayne County Probate Court entered an order (Exhibit B) suspending Mrs. Harkai's fiduciary powers, requiring that she file an accounting within 30 days, and stating that if the accounting was not filed, a successor conservator, Chester Kasavorski, would be appointed. No such accounting was filed and accordingly, the successor trustee was appointed.

On April 19, 1985, the bonding company sent a letter (Exhibit C) to the debtor requesting an accounting and stating that if an accounting was not filed, she would be personally responsible for any amount which the bonding company would be required to pay.

On July 3, 1985, the bonding company sent a second letter (Exhibit D) advising Mrs. Harkai of an upcoming hearing set for July 10, 1985, and again insisting that she file an accounting.

A hearing was held on July 10, 1985 in the Probate Court but Mrs. Harkai did not attend. She testified that she was simply too afraid. At that time, an order was entered removing Mrs. Harkai as the conservator and ordering that she file a final accounting. (Exhibit E) No such final accounting was filed.

The record further reflects that no accounting has ever been filed by Mrs. Harkai in the Probate Court and none has ever been submitted to the successor trustee or to the bonding company despite their numerous efforts to obtain one. Nor has any verbal accounting ever been made.

On February 7, 1986, following a second hearing, the Probate Court entered an order surcharging both Mrs. Harkai and the bonding company $9,000 and ordering the bonding company to pay this amount to the successor trustee forthwith. (Exhibit H) The bonding company complied with this order and obtained a release and a subrogation. (Exhibit I) Thereafter, the bonding company filed suit against Mrs. Harkai.

Subsequently Mrs. Harkai and her husband filed a joint Chapter 13 petition. Their plan proposes to pay unsecured creditors, including the objecting creditor, 10% over a three year time period.

## III.

As noted, the first issue before the Court is the amount of the debt. The debtors contend that the amount of the debt is $3,000 since the balance was spent appropriately on her son's activities or requests. The Court concludes that the evidence overwhelmingly indicates that the amount of the debt is $9,000, arising from the bonding company's subrogation to the position of the successor conservator pursuant to which Mrs. Harkai was obligated in the full amount of $9,000, due to her failure to account for estate funds. It may or may not be true that if Mrs. Harkai had submitted an accounting indicating that a substantial portion of this estate had been spent on her son as she has testified, the amount of the surcharge debt to the successor trustee would have been reduced. However, she never filed any such accounting and as a result, the bonding company was required to pay the full amount. Accordingly, the Court concludes that Mrs. Harkai's debt to the bonding company is the full $9,000.

## IV.

The second issue is whether this bankruptcy petition was filed in good faith. In resolving this issue, the Court relies primarily on the case of *Memphis Bank and Trust Company v. Whitman*, 692 F.2d 427, 431–32 (6th Cir.1982):

The "good faith" requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history. The phrase should, therefore, be interpreted in light of the structure and general purpose of Chapter 13. Obviously the liberal provisions of the new Chapter 13 are subject to abuse, and courts must look closely at the debtor's conduct before confirming a plan. We should not allow a debtor to obtain money, services or products from a seller by larceny, fraud or other forms of dishonesty and then keep his gain by filing a Chapter 13 petition within a few days of the wrong. To allow the debtor to profit from his own wrong in this way through the Chapter 13 process runs the risk of turning otherwise honest consumers and

shopkeepers into knaves. The view that the Bankruptcy Court should not consider the debtor's pre-plan conduct in incurring the debt appears to give too narrow an interpretation to the good faith requirement. *See, e.g., Matter of Kull,* 12 B.R. 654, 659 (S.D.Ga.1981) (among the facts a court should consider to determine whether a debtor has acted in good faith are "the circumstances under which the debtor contracted his debts and has demonstrated bona fides, or lack of same in dealing with his creditors.")

One way to refuse to sanction the use of the bankruptcy court to carry out a basically dishonest scheme under Chapter 13 is to deny confirmation to the proposed plan. When the debtor's conduct is dishonest, the plan simply should not be confirmed. Unless courts enforce this requirement, the debtor will be able to thwart the statutory policy denying discharge in Chapter 7 cases for dishonesty.

Another way to deal with the problem when the conduct is questionable but is not shown to be dishonest as the Bankruptcy Court found it to be in the instant case, is to require full payment in accordance with the contract.

■■■ This language indicates that the bankruptcy court should exercise its discretion to impose upon the parties, and in particular the debtor, a remedy which most closely fits the facts and circumstances consistent with the goals of Chapter 13. In the present case therefore, the Court concludes that the expenses undertaken by Mrs. Harkai for her son for the computer, the video cassette recorder, the television, the bicycle, the clothes, and the computer games were essentially appropriate and not dishonest; therefore, the debts as to those expenses will not be subject to any special obligations in connection with this Chapter 13.

On the other hand, as Mrs. Harkai testified, she knew at the time the expense of $4400 for the car was inappropriate and dishonest, and the Court will require that this expense be repaid in full in connection with this Chapter 13 plan, as suggested in *Whitman.*

■■■ A mixed situation arises in regard to the trip to Toronto, constituting an expenditure of about $500. The Court in its discretion and for lack of any other evidence will simply conclude that $250 of that expenditure was appropriate for the son and that the balance was improperly spent to underwrite the debtors' expenses for this trip.

Accordingly, the Court concludes that the total of $4400 (for the car) plus $250 (for half of the Toronto trip), or $4650, will be required to be repaid in full in connection with the debtor's Chapter 13 plan. The balance of the debt, $9,000 less $4650, or $4350, can be dealt with in the normal course of the Chapter 13 plan as an unsecured debt.

The Court will permit the debtors 15 days from January 14, 1987, within which to file a new Chapter 13 plan consistent with this decision. If that plan is not filed as required, the petition will be subject to dismissal.