Gary L. SCHAFFNER and Sharon M. Schaffner, Debtors–Appellants,

v.

INTERNAL REVENUE SERVICE, Appellee.

Civ. A. No. 87–CV–70193–DT.
Bankruptcy No. 86–04484–R.

United States District Court,
E.D. Michigan, S.D.

Sept. 30, 1988.

Betty A. Ortner, Detroit, Mich., for debtors-appellants.

Joan Fahlgren, U.S. Atty., Ross I. MacKenzie, Asst. U.S. Atty., Detroit Mich., David H. Dickieson, U.S. Dept. of Justice, Washington, D.C., for appellee.

## OPINION AND ORDER AFFIRMING ORDER OF BANKRUPTCY COURT SUSTAINING GOVERNMENT'S OBJECTION TO CONFIRMATION OF PLAN AND GRANTING MOTION TO DISMISS

DUGGAN, District Judge.

Debtors–Appellants Gary and Sharon Schaffner filed for bankruptcy on September 10, 1986. Along with their petition, the Schaffners filed a proposed Chapter 13 bankruptcy plan, which sought discharge of state and federal tax liabilities. Appellee, the United States of America filed an objection to confirmation of the plan by way of a Motion to Dismiss the Chapter 13 proceeding arguing that the plan had not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3) of the Bankruptcy Code. An evidentiary hearing was held on January 7, 1987, following which Bankruptcy Judge Steven W. Rhodes sustained the objection of the government, denied confirmation of the plan and dismissed the Chapter 13 petition. This appeal followed.

The sole issue on appeal is whether the bankruptcy court's finding that the debtor's plan was not proposed in good faith is clearly erroneous.

Appellant Gary Schaffner testified at the evidentiary hearing on January 7, 1987, that he became involved with "constitutionalists" or tax protestors and was "more or less duped by all the hype that they were saying that you didn't have to pay taxes on your wages." [Transcript of Evidentiary Hearing, January 7, 1987, at p.12]. As a result of his involvement with the group Mr. Schaffner did not file tax returns for the years 1980, 1981, 1982 and 1983. During those years Mr. Schaffner filed false

withholding exemption certificates with his employer. In October, 1984, Mr. Schaffner was convicted of two counts of failure to file individual income tax returns in violation of 26 U.S.C. § 7203 and two counts of filing false withholding exemption certificates in violation of 26 U.S.C. § 7205. Appellant was sentenced to two consecutive one-year prison terms and two concurrent three-year periods of probation to begin upon release from custody. As a special condition of probation, the sentencing court ordered Mr. Schaffner to comply with all federal tax statutes, make no changes in a withholding exemption certificate without the permission of the Probation Department and to file with the Probation Department all correspondence relating to tax matters.

Following his conviction, appellant filed returns for the years 1980, 1981, 1982 and 1983.

In April, 1985, while he was in prison, appellant received $11,000 from his employer's profit sharing plan. Although appellant knew at that time that he owed $2,500 in back taxes (exclusive of interest and penalties) for 1980 and 1981, he testified that 90% of the money went to pay attorney's fees for his conviction and to pay his mother back.

Because Mr. Schaffner had filed a false W-4 form in 1984, the year of his conviction, additional liabilities accrued with respect to taxes that should have been withheld from his wages. Moreover, appellant testified that when he received the $11,000 from profit sharing in 1985, he was ignorant of the fact that no taxes had been withheld. Mr. Schaffner thus incurred an additional liability for unpaid taxes for the 1985 tax year.

Following his release from prison, Mr. Schaffner met with Barbara Repen, a revenue officer for the U.S. Government, and set up a payment plan to repay his back taxes. Pursuant to the arrangement, Mr. Schaffner paid $154.50 from February, 1986 through June, 1986. Mr. Schaffner testified that in June, 1986, he received a letter from the State of Michigan regarding a tax amnesty plan in which Mr. Schaffner could pay $6,000 to extinguish his entire debt to the state for back taxes. Mr. Schaffner realized that he could not pay the state and the federal government back so he stopped making the $154.50 payments and sought legal advice. Appellant then filed the present petition and Chapter 13 plan.

The proposed amended Chapter 13 plan provides for payments of $33.06 per week for a period of five years (approximately $142 per month). The only creditors listed in the Chapter 13 statement are the State of Michigan and the Internal Revenue Service for state and federal tax debts. In addition to the $33.06 per week payments, Mr. Schaffner also offered to commit whatever tax refunds he receives during the life of the plan to his tax debts.

Judge Rhodes, in an opinion issued from the bench on January 7, 1987, concluded that plan had not been proposed in good faith and accordingly denied confirmation of the plan. Appellants seek reversal of the bankruptcy court's determination and request that this Court confirm the Chapter 13 plan which was submitted. Appellants set forth, essentially, three grounds justifying the relief they seek:

(1) the bankruptcy court's determination that the plan was not submitted in good faith is erroneous;

(2) the bankruptcy court erroneously concluded that this case was controlled by *In re Dean S. Hazel*, 68 B.R. 287 (E.D. Mich.1986);

(3) the bankruptcy court incorrectly based its decision, in part, on the fact that it believed that the proposed plan may constitute a violation of the debtor's probation.

(1) It is this Court's opinion that the bankruptcy court's determination of lack of good faith is not "clearly erroneous." Although Judge Rhodes did state that the case of *In re Hazel* "... controls the result which the Court must reach in this case...." (Tr. of hearing of January 7, 1987, p. 41) and although he frequently referred to *Hazel* in his opinion, nevertheless it is the opinion of this Court that Judge Rhodes made an independent finding that appellants had failed to establish that

the plan was submitted in good faith as required by 11 U.S.C. § 1325(a)(3) of the bankruptcy code. While Judge Rhodes found many similarities between this case and the *Hazel* case, he did, in fact, set forth the factors of this case which he considered in arriving at his conclusion.

Judge Rhodes stated:

The Debtor's original intention in evading these taxes by failing to file his returns apparently continued through the time he was in custody at which time he had the means to pay these taxes but did not, and even continued after his release when he was given every opportunity by the Internal Revenue Service to make installment payments but then simply did not carry it out. Now he says that he was required to stop that installment payment as as result of a previously unknown tax obligation to the State of Michigan, but the Court finds that that installment agreement certainly would have been adjusted to take account of that new consideration, and further that Mr. Schaffner and his family would have been given every consideration arises (sic) from those circumstances. Instead of undertaking that opportunity, however, he chose to file this Chapter Thirteen and thereby to discharge all but approximately 14 per cent of those early unsecured tax obligations. [Tr. at p. 45].

In addition to the findings set forth above, Judge Rhodes relied significantly on the Sixth Circuit case of *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982) in which the court clearly held that the debtor's preplan conduct in incurring the debt is a relevant factor in determining "good faith." Judge Rhodes concluded that "... the Debtor's conduct was plainly fraudulent and dishonest, and accordingly the Court cannot confirm the plan." (Tr. of hearing of January 7, 1987 at p. 47).

The Sixth Circuit in *In re Caldwell*, 851 F.2d 852, 858 (6th Cir.1988) recognized that a bankruptcy court's finding that a debtor's plan was not proposed in good faith, is a finding of fact subject to the "clearly erroneous" standard of review. The *Cald-*

*well* court set forth an extensive list of factors for a court to consider in determining a debtor's good faith under 11 U.S.C. § 1325(a)(3):

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Caldwell*, at 859 (quoting with approval *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)).

The above list was supplemented with the following four considerations:

[12] whether the debtor is attempting "to abuse the spirit of the Bankruptcy Code" is a legitimate factor to consider, [citation omitted],

[13] "good faith does not necessarily require substantial repayment of the unsecured claims," [citations omitted],

[14] the fact a debt "is nondischargeable under Chapter 7 does not

make it nondischargeable under Chapter 13," [citation omitted], and

[15] the fact that a debtor seeks to discharge an otherwise nondischargeable debt is not *per se*, evidence of bad faith but may be considered as part of the totality of the circumstances analysis, [citation omitted].

*Caldwell* at 859–860.

The above list is illustrative of the Sixth Circuit's recognition that a debtor's good faith must be determined by examining the "totality of the circumstances."

■ In the present case, it is clear that the bankruptcy court considered the totality of the circumstances in reaching its conclusion that appellants' plan was not filed in good faith. Judge Rhodes found that the debt sought to be discharged arose out of the illegal and fraudulent conduct of the debtor and that the only debts listed on the Chapter 13 statement were for unpaid taxes to the State of Michigan and the federal government. Judge Rhodes considered appellants' conduct in failing to use any part of the $11,000 profit sharing payment to pay his tax debts as well as appellants' conduct in defaulting on his payment plan with the I.R.S. without first attempting to modify the plan to take into account the new obligations.

The bankruptcy court examined all of the facts and determined that appellants plan was not proposed in good faith. This Court does not conclude that the bankruptcy court's finding that the debtor's plan was not proposed in good faith is "clearly erroneous". *In re Caldwell, supra* at 858.

■ (2) As indicated above, this Court concludes that Judge Rhodes was incorrect in his belief that the decision in this case was "controlled" by the decision in *In re Hazel*. Debtors/Appellants in this case had a right to have the determination of whether their plan was submitted in good faith evaluated on the facts of their case, independently of the decision made by another bankruptcy judge in *In re Hazel*. While there are, admittedly, a large number of similarities between the individuals involved in this case and the individual

involved in *Hazel*, and while there is some merit in attempting to treat individuals who have engaged in similar conduct in a "similar" way, nevertheless, debtors/appellants were entitled to independent consideration. However, as set forth above, this Court believes that these individuals did receive the separate and independent treatment to which they were entitled. This Court does not believe that Judge Rhodes, concluded that the appellants plan was not submitted in good faith simply because of the ruling made in *Hazel*.

■ [3] This Court agrees with appellants that a decision on whether or not to confirm this plan should have been made independent of any consideration of the effect on the probationary order entered in the criminal case. In this Court's opinion, neither the debtors' application for confirmation of the plan nor a confirmation of the plan itself, would in any way constitute a violation of the special condition of Mr. Schaffner's probation which required him to comply with all federal tax statutes. Nor does this Court believe that the confirmation of the plan submitted by appellants would, in any way, relieve Mr. Schaffner of the obligations imposed under the order of probation. Whether or not the sentencing judge, upon the appropriate application, would modify the terms of probation, would of course be a decision left to the sound discretion of the sentencing judge. This erroneous conclusion on the part of the bankruptcy court does not, however, require reversal. In order for the debtor to be entitled to have the plan confirmed, the debtor must establish that the plan was submitted in good faith. This Court has previously concluded that the bankruptcy court's conclusion that such "good faith" requirement had not been met was not "clearly erroneous."

Now therefore, for the reasons as set forth above,

IT IS ORDERED that the Order of the Bankruptcy Court dated January 9, 1987, Sustaining Government's Objection to Confirmation of Plan and Granting Motion to

Dismiss, be and the same is hereby AF-FIRMED.