**In re SANDERS COAL & TRUCKING, INC., James Ray Sanders & Carol Kay Sanders, Debtors.**

**Bankruptcy Nos. 90–12855, 90–12838.**

United States Bankruptcy Court, E.D. Tennessee.

July 30, 1991.

Harold L. North, Jr., Schumacker & Thompson, Chattanooga, Tenn., for Sanders Coal & Trucking, Inc.

Howell Clements, Reingold, Clements & Schulman, Chattanooga, Tenn., for James Ray Sanders and Carol Kay Sanders.

Steven G. McKnight, Asst. U.S. Atty., Chattanooga, Tenn., for U.S.

RALPH H. KELLEY, Chief Judge.

## MEMORANDUM

The United States objects to confirmation of the debtors' proposed Chapter 11 plan. The government has a priority unsecured tax claim for about $61,000. The plan proposes to pay the claim in full with 10% interest. The government objects to the timing of the payments. Under the proposed plan, the government will not receive any payment on the claim until about three years after confirmation.

The court finds the facts as follows.

The proposed plan is a joint plan by the corporation, Sanders Coal & Trucking, and the husband and wife who own and operate the corporation. Mr. Sanders owns all the stock and is president of the corporation; Mrs. Sanders is the corporation's secretary. The debtors propose to make monthly payments to a disbursing agent who will distribute the money to creditors. Payments are to begin 30 days after confirmation. The monthly payments gradually increase in amount:

| Months of the Plan | Monthly Payment |
| --- | --- |
| 1 through 12 | $20,000 |
| 13 through 36 | $22,000 |
| 37 through 60 | $23,000 |
| 61 through 87 | $25,000. |

Administrative expenses, estimated at $15,000, are to be paid in full on the effective date of the plan or from the first monthly payment. After payment of administrative expenses, the monthly payments will be used to pay secured claims. Payment on priority unsecured claims will begin when there is money left over after payments on secured claims.

The disclosure statement includes an analysis of how the payments will be distributed. The analysis shows no payments on priority unsecured claims until after the plan payments increase to $23,000 per month in the 37th month of the plan. That would put the first payment on the government's claim in 1994. The payments on priority unsecured claims are estimated as follows:

| Year | Payment |
|------|---------|
| 1994 | $14,141 |
| 1995 | $58,507 |
| 1996 | $47,163 |

Almost all of these payments would go to the government's claim since the only other priority unsecured tax claim is a much smaller claim by the State of Tennessee.

The plan provides for full payment of the priority unsecured claims before any payment on general unsecured claims.

The liquidation analysis, which was included in the disclosure statement, estimates that priority and general unsecured claims would receive no payment in a liquidation. The disclosure statement predicts that general unsecured claims will receive more than a 25% payout under the plan.

The disclosure statement includes a forecast of the corporate debtor's income and expenses, including the plan payments, during the performance of the plan. It shows the predicted amount of cash on hand at the end of each month after making the plan payment. The forecast predicts cash on hand at the end of August, 1991 to be $4,293.00, but this is the lowest amount forecast. The forecast for September, 1991 through March, 1992, ranges from about $22,000 to about $56,000.

After the confirmation hearing, the debtors filed a modification of the plan. The modification provides that the debtors will make quarterly payments of $1,800 directly to the government, instead of through the disbursing agent. The payments will begin the first quarter after confirmation and continue until the government begins to receive payments from the disbursing agent in 1994. In its proposed findings of fact and conclusions of law, the government says that this will about pay the interest accruing on the claim before the disbursing agent begins payments in 1994.

## DISCUSSION

■ Unless the government agrees to a different treatment, a Chapter 11 plan must provide for deferred cash payments with a present value equal to the amount of the government's priority unsecured tax claim. The present value requirement means that the amount of the claim, the principal, must be paid with interest to make up for the delay in payment. 11 U.S.C.A. § 1129(a)(9)(C) (West Supp.1991) (The statute also requires the deferred payments to be completed within six years after assessment of the tax.)

■ This payment standard is a basic confirmation requirement for priority unsecured tax claims; it is not a cram-down requirement that applies only if the debtor seeks to have the plan confirmed over the government's objection.

The payments proposed in the plan will pay the government the present value of its claim. The government argues that the plan still cannot be confirmed because the proposed method of payment is not "deferred cash payments." According to the government, "deferred cash payments" requires monthly installment payments on principal and interest beginning with the first month of the plan. The government bases this argument primarily on the decision in *In re Mason and Dixon Lines, Inc.*, 71 B.R. 300, 15 Bankr.Ct.Dec. 930 (Bankr. M.D.N.C.1987).

The court in *Mason and Dixon* said that "deferred cash payments" means periodic payments. The court imposed a presumption that payment must be made in equal monthly payments beginning the first month of the plan unless there are "special or unusual facts which would constitute grounds to vary the normal payment interval." 71 B.R. 303. The court refused to confirm a plan to pay only the interest for five years with the entire principal and the last year's interest to be paid in a balloon payment in the sixth year.

■ The courts must give a statute its plain meaning unless it leads to a clearly senseless result. *Johnson v. Home State Bank*, — U.S. —, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Owen v. Owen*, — U.S. —, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991); *Ray v. City Bank & Trust Co. (In re C–L Cartage Co.)*, 899 F.2d 1490, 20 Bankr.Ct.Dec. 599, 22 Collier Bankr.Cas.2d 901 (6th Cir.1990).

■ "Deferred" means delayed. It means that the Chapter 11 debtor is not required to pay the priority claims in full in a lump sum payment on the effective date of the plan. *In re Parker,* 15 B.R. 980, 8 Bankr.Ct.Dec. 688, 5 Collier Bankr.Cas.2d 913 (Bankr.E.D.Tenn.1981) (a Chapter 13 case), *aff'd* 21 B.R. 692, 9 Bankr.Ct.Dec. 303, 6 Collier Bankr.Cas.2d 1040 (E.D.Tenn. 1982).

■ "Cash" obviously means money instead of real property, goods, stock in the reorganized debtor, or a lien on its property.

"Payments" is the word that causes trouble because "deferred ... payments" suggests periodic installment payments. The legislative history reveals that Congress only wanted to make sure that confirmation would not require full payment at the beginning of the plan. S.Rep. 989, 95 Cong., 2d Sess. 128 (1978) U.S.Code Cong. & Admin.News 1978, p. 5787; S.Rep. 1106, 95th Cong., 2d Sess. 34 (1978); 124 Cong. Rec. H 11103 (Sept. 28, 1978) (remarks of Rep. Edwards); H.Rep. 595, 95th Cong., 1st Sess. 413 (1977) U.S.Code Cong. & Admin.News 1978, p. 5963; *reprinted* Appendix Vols. 2 & 3, L. King, *Collier on Bankruptcy* (15th ed. 1990).

■ The court rejects the presumption in *Mason and Dixon* that monthly payments of principal and interest are required unless unusual facts justify a different period. "Deferred cash payments" is too broad to allow the court to impose the presumption. *In re Snowden's Landscaping Co.,* 110 B.R. 56 (Bankr.S.D.Ala.1990); *see also United States v. Arrow Air, Inc.,* 101 B.R. 332 (S.D.Fla.1989). The court concludes that the plan provides for deferred cash payments on the government's unsecured priority tax claim.

■ The court does not mean to say that it must approve any method of payment that is within the broad definition "deferred cash payments" and will pay the present value of the priority unsecured tax claim within six years. The plan can be confirmed only if it meets the cram-down requirements. 11 *U.S.C.A.* § 1129(b) (West 1979 & Supp.1991). For the plan to be crammed down, it must be "fair and equitable." 11 *U.S.C.A.* § 1129(b)(1) (West 1979).

■ The fair-and-equitable standard expressly includes a payment requirement, but it is less strict than the basic payment requirement for priority unsecured tax claims. It allows payment in any property, instead of cash, and does not put a time limit on how long payments can run. Thus, any plan that meets the basic payment requirement for priority unsecured tax claims will satisfy the payment requirement included in the fair-and-equitable test. 11 *U.S.C.A.* § 1129(b)(2)(B)(i) (West 1979). Since this plan meets the basic payment requirement, the court need not consider the payment requirement in the fair-and-equitable standard.

■ The fair-and-equitable standard is not limited to the payment requirement. A plan that meets the payment requirement can fail the fair-and-equitable test for other reasons. 11 *U.S.C.A.* § 1129(b)(2) & § 102(3) (definition of "includes") (West 1979); *In re Edgewater Motel, Inc.,* 85 B.R. 989 (Bankr.E.D.Tenn.1988). The court is free to consider whether the plan is fair and equitable though the government did not argue the point.

The court can see two distinct arguments under the fair-and-equitable standard.

■ First, the government can argue that the plan technically preserves the priority of its claim but in effect erodes the priority.

The debtors have a simple counter argument. The government's claim has priority over general unsecured claims; this priority is preserved by the plan provision for full payment of the government's claim ahead of general unsecured claims. The claim does not have priority over secured claims. It is not entitled to payments ahead of payments on secured claims or payments beginning at the same time as payments on secured claims. The government might have a valid objection if it proved that payments on its claim are delayed longer than they should be because

the plan is overly generous to secured creditors at the beginning. The government, however, has not attempted to prove this.

The court leaves open the possibility that a plan may violate the fair-and-equitable standard as to a priority unsecured tax claim by eroding its priority, but the government has not proved it in this case.

The second fair-and-equitable argument arises from the idea that the debtors' prediction of their ability to pay three years after confirmation is less reliable than a prediction of their ability to pay sooner. The more time passes, the more events may foil the prediction, and the longer the delay in starting payments, the more the creditor risks not being paid the present value of its claim. *See Federal Savings & Loan Ins. Corp. v. D & F Const., Inc.*, 865 F.2d 673, 18 Bankr.Ct.Dec. 1529, 20 Collier Bankr.Cas.2d 716 (5th Cir.1989); *In re Spanish Lake Associates*, 92 B.R. 875, 18 Bankr.Ct.Dec. 693 (Bankr.E.D.Mo.1988); *In re Anderson Oaks (Phase I) Ltd. Partnership*, 77 B.R. 108 (Bankr.W.D.Tex. 1987).

■ Of course, the court must consider facts other than delay to decide whether the plan imposes so much risk on a particular creditor that it is not fair and equitable. *See In re Club Associates*, 107 B.R. 385, 19 Bankr.Ct.Dec. 1708 (Bankr.N.D.Ga.1989); *In re Hollanger*, 15 B.R. 35, 8 Bankr.Ct. Dec. 365, 5 Collier Bankr.Cas.2d 386 (Bankr.W.D.La.1981).

The cases just cited all involved delayed payments on secured claims. A secured creditor in effect has a choice between its collateral now and the future payments proposed in the plan. The secured creditor faces more risk of not being paid the present value of its collateral when the plan imposes a long delay in payments on the principal of the secured debt or the interest accruing after confirmation. B. Schermer & K. Bartz, *Negative Amortization and Plan Confirmation: Is It Fair and Equitable Under § 1129(b) of the Bankruptcy Code?*, 8 Bankr.Dev.J. 1 (Emory U.1991).

The debtors can argue that the reasoning of these cases does not apply to unsecured claims that would receive no payment in a liquidation. In other words, the plan does not impose too much risk on the government because the alternative is a liquidation in which the government would receive nothing. Furthermore, all unsecured creditors should bear the risk of a delay in payments that will ultimately benefit them by allowing the debtors to pay secured claims first so that they can eventually make payments on the unsecured claims. And finally, the payments on secured debts will create equity from which the government can collect if the debtors fail to carry out the plan.

■ The debtors' argument assumes that the debtors could not propose a confirmable plan that would start paying the principal of the government's claim earlier than the plan before the court. The debtors have not proved that the government faces an all-or-nothing choice between this particular plan and a liquidation that would produce no payment on the government's claim. The plan now before the court avoided objections by secured creditors, but that does not mean it is the only confirmable plan or that any other confirmable plan would treat the government's claim no better than this plan. A plan than imposes a long delay before starting payments on unsecured claims may violate the fair-and-equitable standard even if the unsecured claims would receive no payment in a Chapter 7 liquidation. In this case, zero payment on the government's claim in a liquidation is not necessarily the correct starting point to decide whether the plan is fair and equitable.

The court must apply the fair-and-equitable standard to this kind of question on a case-by-case basis. B. Schermer & K. Bartz, *Negative Amortization and Plan Confirmation: Is It Fair and Equitable Under § 1129(b) of the Bankruptcy Code?*, 8 Bankr.Dev.J. 1 (Emory U.1991).

The failure to pay taxes to the IRS is about as sure a way to be put out of business as failure to pay debts secured by equipment necessary to operate the business. Furthermore, when the IRS starts to

collect, secured creditors may find their debts less secure in fact than on paper. The debtors avoided this threat to themselves and their secured creditors by filing Chapter 11 cases. The individual debtors may also be personally liable for the taxes and unable to discharge the debt in a Chapter 7 liquidation case, but under the combined Chapter 11 plan they get to keep their business and pay the tax debt while paying only about 25% on their general unsecured debts. The debtors now want to delay payment of the government's tax claim for even longer while they continue in business by paying their secured debts first. The payment rules of Chapter 11 allow the debtors' plan to do this, but that does not automatically make the plan's treatment of the government's priority tax claim either fair or equitable.

 The plan will benefit the debtors greatly. Furthermore, their own forecast shows that they will have enough income from the business early in the plan to pay the interest accruing on the government's claim and some on the principal. The court finds that the debtors should begin payments on the principal of the government's claim earlier than proposed in the plan. The court concludes that it is not fair and equitable to suspend payments on the principal of the government's tax claim for three years.

The court is not saying that a plan will be fair and equitable to general unsecured creditors only if it begins payments on their claims as soon as the debtor has any cash that could possibly be used to make the payments. The fair-and-equitable standard does not require that the debtor be stripped of operating cash, and the debtor will need more operating cash as its business improves, if it improves as predicted. The court is only saying that, on the facts of this case, the plan should start payments on the principal of the government's priority unsecured claim earlier than proposed.

The court cannot say exactly when payments on the principal of the government's claim should begin, or what the payment interval should be, or how much the payments should be. The debtors may be able

to propose a confirmable plan that will pay the accruing interest and begin earlier payments on the principal without making large payments on the principal before the payments already set for later in the plan. *See, In re Snowden's Landscaping, supra; In re Hollanger, supra.*

The court also leaves open the possibility that the debtors can devise some method other than earlier payments for protecting the government's claim and overcoming its objection.

The debtors will be allowed 30 days to modify the plan.

This memorandum opinion constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.