In re GREGORY BOAT
COMPANY, Debtor.

Bankruptcy No. 91–08611–R.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Aug. 28, 1992.

Arnold Schafer, Birmingham, Mich., for debtor.

Mark Davidson, Detroit, Mich., for MESC.

David Foust, Detroit, Mich., for State of Mich.

Karen Evangelista, Rochester Hills, Mich., for Wayne County Treasurer.

Cynthia Warr, Detroit, Mich., for City of Detroit.

Lynn Brimer, Detroit, Mich., for I.R.S.

## SUPPLEMENTAL OPINION

STEVEN W. RHODES, Bankruptcy Judge.

On August 17, 1992, the Court confirmed the debtor's First Amended Plan of Reorganization. This opinion supplements the decision given in open court at that time.

## I.

Objections to confirmation were asserted jointly by the United States, the State of Michigan, the Michigan Employment Security Commission, Wayne County and the City of Detroit (collectively called "the taxing authorities").

The taxing authorities object to the following provision of the debtor's first amended plan, relating to the treatment of their claims:

B. GROUP II. The claim of Group II shall consist of the tax claim of the taxing authorities which are entitled to priority under § 507(a)(7) of the Code. The claimants in this group shall consist of any pre-petition Allowed Claim for taxes. The claimants within this group shall receive on account of such Claim, deferred monthly cash payments over a period not exceeding six (6) years from the date of assessment, if any, unless otherwise agreed by the parties, of a value as of the Effective Date of the Plan equal to the allowed amount of such Claim plus any applicable interest. *Payments to the members of this group shall begin one (1) year after the Effective Date notwithstanding the addition of interest which shall accrue from and after the Effective Date.* One (1) year after the Effective Date, the Priority Claim of the respective taxing authority shall be amortized to allow for a monthly payment of both principal and interest in equal monthly installments. The number of months to allow for a full payment of the amortized Priority Claim shall be equal to the number of months existing between the month the first installment is due, and the month which represents the last month of the sixth year from the date of assessment. If no assessment has been made, the last month shall mean and refer to the sixtieth (60th) month after the first installment is due. (emphasis added.)

Specifically, the taxing authorities contend that the debtor's proposed one year delay in commencing payments to them: (1) violates 11 U.S.C. § 1129(a)(9)(C); (2) is not "fair and equitable" under 11 U.S.C. § 1129(b); and (3) violates the priority provisions of 11 U.S.C. § 507(a).

## II.

Section 1129(a)(9)(C) provides:

(a) The court shall confirm a plan only if all of the following requirements are met:

. . . .

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

. . . .

(C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

The taxing authorities contend that this section requires equal periodic cash payments, and does not permit the one year delay in beginning the cash payments proposed in the debtor's plan. In support of their position, the taxing authorities cite *In re Mason and Dixon Lines, Inc.*, 71 B.R. 300 (Bankr.M.D.N.C.1987); *In re Mahoney*, 80 B.R. 197 (Bankr.S.D.Cal.1987); *In re Inventive Packaging Corp.*, 81 B.R. 74 (Bankr.D.Colo.1987).

The debtor contends that its proposed treatment of the tax claims fully complies with § 1129(a)(9)(C), despite the one year delay in commencing payments. In support, the debtor cites *In re Snowden's Landscaping Co.*, 110 B.R. 56 (Bankr. S.D.Ala.1990); *In re Sanders Coal & Trucking, Inc.*, 129 B.R. 516 (Bankr. E.D.Tenn.1991); *In re Volle Elec., Inc.*, 132 B.R. 365 (Bankr.C.D.Ill.1991), *aff'd*, 139 B.R. 451 (C.D.Ill.1992).

### A.

In *Mason and Dixon Lines, Inc.*, upon which the taxing authorities rely, the court sustained the taxing authorities' objection to the plan of reorganization that proposed first to pay interest only on the tax claims during the six years, and then to pay the principal amount on the claim at the end of the sixth year. The court held that § 1129(a)(9)(C) requires cash payments of principal in installments over the six year period. The court concluded that "installment payments should be spread over six years with 72 equal monthly payments of principal and interest absent exceptional circumstances." 71 B.R. at 302.

Based on *Mason and Dixon Lines, Inc.*, similar objections were sustained in *Mahoney* and *Inventive Packaging Corp.*

*Snowden's Landscaping Co.*, upon which the debtor relies, declined to adopt the holding of *Mason and Dixon Lines, Inc.* that § 1129(a)(9)(C) requires equal monthly payments on priority tax claims. The court held that the language of § 1129(a)(9)(C) does not require such a result, and that "[w]hether a proposed plan complies with § 1129(a)(9)(C) must be determined by the facts of each case viewing all the surrounding circumstances." 110 B.R. at 61. In confirming the debtor's plan under this analysis of § 1129(a)(9)(C), the court noted that the debtor's proposal to pay more of the principal part of the tax claims in the later years of the plan enhanced the prospects for a successful rehabilitation and therefore the likelihood that the tax claims would be paid in full. *Id.*

The holding of *Mason and Dixon Lines, Inc.* was also rejected in *Sanders Coal & Trucking, Inc..* That court agreed with *Snowden's Landscaping Co.* that the plain language of § 1129(a)(9)(C) does not require equal monthly installment payments on priority tax claims. 129 B.R. at 520.

Finally, both the Bankruptcy Court and District Court decisions in *Volle Elec., Inc.* rejected the view that § 1129(a)(9)(C) requires equal monthly installment payments.

### B.

This Court concludes that nothing in the language of § 1129(a)(9)(C) requires that a Chapter 11 plan must propose equal monthly payments on priority tax claims. Therefore, this Court joins with those courts that reject the holding of *Mason and Dixon Lines, Inc..*

The Supreme Court has indicated in a series of bankruptcy cases that the Bank-

ruptcy Code must be given its plain meaning, even in the face of arguably compelling policy justifications for a different result. *See Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992) ("In our view, the plain language of the Bankruptcy Code and ERISA is our determinant."); *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992); *Barnhill v. Johnson,* —— U.S. ——, ——, 112 S.Ct. 1386, 1391, 118 L.Ed.2d 39 (1992); *Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Union Bank v. Wolas,* —— U.S. ——, ——, 112 S.Ct. 527, 531, 116 L.Ed.2d 514 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."); *Toibb v. Radloff,* —— U.S. ——, ——, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991); *Johnson v. Home State Bank,* —— U.S. ——, ——, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991); *Farrey v. Sanderfoot,* —— U.S. ——, ——, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991); *Begier v. I.R.S.,* 496 U.S. 53, 58–59, 110 S.Ct. 2258, 2262–63, 110 L.Ed.2d 46 (1990); *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *United States v. Energy Resources Co.,* 495 U.S. 545, 549–51, 110 S.Ct. 2139, 2142–43, 109 L.Ed.2d 580 (1990); *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

■ Giving effect to the language of § 1129(a)(9)(C) is straightforward. This section permits "deferred cash payments" within six years of assessment. As noted in *Sanders Coal & Trucking, Inc.,* "deferred" simply means delayed. 129 B.R. at 520. Nothing in the language of § 1129(a)(9)(C) suggests that payments on priority tax claims must be either periodic or equal. Indeed nothing in the statutory language prohibits a single payment of principal and interest at the end of the six year time period.

Clearly, Congress could have required that tax claims be paid in the manner required by *Mason and Dixon Lines, Inc.;* such an intent would be easy to state in appropriate statutory language. However, it is inappropriate for the court to impose any limitation upon the flexibility allowed by the current statutory language, even if the court finds it appropriate, good practice, good policy, or equitable.

Accordingly, this Court concludes that the debtor's treatment of the priority tax claims is permitted by the plain language of § 1129(a)(9)(C).

### III.

■ The taxing authorities also contend that the plan violates § 1129(b) in that it is not "fair and equitable." Specifically, the taxing authorities are concerned that the plan proposes to pay the unsecured creditors on the effective date, and to make periodic payments to the secured creditor (Resolution Trust Corporation) beginning immediately after the effective date.

There is some suggestion in the cases that it is appropriate to analyze the treatment of priority tax claims under the "fair and equitable" standard of § 1129(b), when the taxing authority objects to that treatment. *See Sanders Coal & Trucking, Inc.,* 129 B.R. at 520–21; *Snowden's Landscaping Co.,* 110 B.R. at 58.

This Court concludes that such an analysis is inconsistent with the statutory scheme of Chapter 11. Section 1129(b) provides, in pertinent part:

(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of

claims or interests that is impaired under, and has not accepted, the plan.

In other words, even if a class is impaired and does not accept the plan, the plan can nevertheless be confirmed if it meets the requirements of § 1129(b), including the "fair and equitable" requirement.

But in the present case, no "class" has rejected the plan. Certainly the taxing authorities have objected to the plan, but they do not constitute a proper class. Section 1123(a)(1) requires a plan to designate "classes of claims, other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(7) of this title ...[.]" *See In re Sullivan*, 26 B.R. 677, 678 (Bankr. W.D.N.Y.1982). Because the taxing authorities do not properly constitute a "class of claims," there is no cause to consider whether their claims are "impaired" under § 1124, or whether the taxing authorities have "accepted" the plan under § 1126(c). Moreover, because the taxing authorities do not constitute a class with the power to vote to accept the plan, the majority of such creditors cannot bind the minority, although individually each tax creditor can consent to treatment inconsistent with the requirements of § 1129(a)(9)(C).

In any event, because § 1129(b) is applied only if a "class of claims" is "impaired" and has not "accepted" the plan, there is no cause to consider whether the requirements of that section are met in this case, and no cause to consider whether the plan is "fair and equitable."

Accordingly, the Court overrules the taxing authorities' objection that the plan violates § 1129(b).

## IV.

■ Finally, the taxing authorities assert that the treatment of their claims in the debtor's plan violates the priorities set forth in 11 U.S.C. § 507(a). The factual basis of this objection is the same as the factual basis for the objection that the plan is not "fair and equitable"—that payments to the secured creditor and the unsecured creditors will be made on or shortly after the effective date, while payments to the taxing authorities will begin one year later.

In *Snowden's Landscaping Co.*, 110 B.R. at 60–61, the court analyzed all of the circumstances of the case and concluded that payments to the secured and unsecured creditors before the taxing authorities would not violate § 507(a), because it would allow the debtor to succeed and eventually pay all of its debts in full.

This Court likewise rejects the taxing authorities' objection that the debtor's plan violates the priorities of § 507(a), although for a different reason than that asserted in *Snowden's Landscaping Co.*.

Section 507(a) provides in its opening clause, "The following expenses and claims have priority in the following order ...[.]" This section then states the priorities of eight types of expenses and claims; tax claims are the seventh priority.

It is certainly arguable that the reference in § 507(a) to payment priority "in the following order" is a reference to a temporal or chronological order. Under this interpretation, a claim of a higher priority must be paid in time before a claim of a lower priority. Because neither secured nor unsecured claims are given any priority in § 507(a), presumably such claims must be paid chronologically after all of the claims listed in § 507(a).

The difficulty with this interpretation of § 507(a) is that it cannot be reconciled with § 1129(a)(9), which sets forth its own specific requirements for a Chapter 11 plan regarding the chronological order of paying the types of claims described in § 507(a). And, more importantly, nothing in § 1129 (or indeed in all of Chapter 11) requires that a plan propose to pay secured or unsecured claims in any particular time order in relation to tax claims.

Section 507(a) can be reconciled with § 1129(a) if the former is instead interpreted as a statement of which claims should be paid if there are insufficient funds to pay all claims in full. Thus, in the case of a going concern, there are several provisions, including § 1129, which affect the priorities of § 507(a). This interpretation is advanced in 3 *Collier on Bankruptcy*

¶ 507.08 (Lawrence P. King ed., 15th ed. 1992):

Although section 507 is the designated section governing priorities upon distribution of assets to unsecured creditors, other sections of the Code affect, and in some ways alter, these priorities. These include section 364(c) (superpriority of post-petition unsecured credit), section 503 (administrative expenses), section 726(b) (*pro rata* distribution among class of claimants upon liquidation and superpriority of administrative expenses of liquidation proceeding over administrative expenses of prior bankruptcy proceedings under other chapters), section 1129(a)(9) (distribution among classes of claimants upon confirmation of a plan of reorganization), section 1222(a)(2) (deferred payment to all priority claimants upon confirmation of plan adjusting debts of family farmer), and section 1322(a) (deferred payment to all priority claimants upon confirmation of plan adjusting debts of individuals).

The Court concludes that if a plan meets the requirements of § 1129, it is confirmable, even if it proposes payments that are not in the time order set forth in § 507(a). Accordingly, the taxing authorities' objection to confirmation on this ground is overruled.

## V.

### A.

In addition to the specific requirements of § 1129(a)(9)(C), two other significant

limitations on the treatment of priority tax claims are found in § 1129(a).

The first is the requirement in § 1129(a)(3) that the plan has been proposed "in good faith." Although this phrase is not defined in the Bankruptcy Code, it has been variously interpreted by prior case law. Under one view, the good faith requirement of § 1129(a)(3) is met if the plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *In re Block Shim Dev. Company–Irving,* 939 F.2d 289, 292 (5th Cir.1991); *In re Corey,* 892 F.2d 829, 835 (9th Cir.1989); *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1315 (8th Cir.1987); *In re Madison Hotel Assocs.,* 749 F.2d 410, 424–25 (7th Cir.1984); *In re Coastal Cable T.V., Inc.,* 709 F.2d 762, 764 (1st Cir.1983); *In re Stolrow's Inc.,* 84 B.R. 167, 172 (9th Cir. BAP 1988); *In re Jorgensen,* 66 B.R. 104, 108–09 (9th Cir. BAP 1986); *In re Nikron, Inc.,* 27 B.R. 773, 778 (Bankr.E.D.Mich.1983).

Under another view, the good faith requirement is met if the plan was proposed with honesty and good intentions, and with a basis for expecting that a reorganization can be effected.[1] *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 649 (2d Cir.1988); *In re Sun Country Dev., Inc.,* 764 F.2d 406, 408 (5th Cir.1985); *In re Koelbl,* 751 F.2d 137, 139 (2d Cir.1984).

Under a third view, good faith requires fundamental fairness in dealing with one's creditors. *Stolrow's Inc.,* 84 B.R. at 172; *Jorgensen,* 66 B.R. at 109.

---

**1.** Different concepts of "good faith" apply in other contexts under the Bankruptcy Code. For example, a lack of good faith may constitute cause to lift the automatic stay under § 362(d)(2). *See, e.g., In re Little Creek Dev. Co.,* 779 F.2d 1068 (5th Cir.1986); *In re Thirtieth Place, Inc.,* 30 B.R. 503 (9th Cir. BAP 1983).

In addition, a lack of good faith may also constitute cause for dismissal under § 1112(b). *See, e.g., In re Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985).

There is extensive case law defining good faith in the context of the confirmation of a Chapter 13 plan. *See, e.g., In re Caldwell,* 895 F.2d 1123 (6th Cir.1990); *In re Doersam,* 849 F.2d 237 (6th Cir.1988); *In re Okoreeh–Baah,* 836 B.R. 1030 (6th Cir.1988); *Memphis Bank &*

*Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir. 1982); *Schaffner v. I.R.S.,* 95 B.R. 62 (E.D.Mich. 1988); *In re Kourtakis,* 75 B.R. 183 (Bankr. E.D.Mich.1987); *In re Hazel,* 68 B.R. 287 (Bankr.E.D.Mich.1986), *aff'd sub nom. Hazel v. I.R.S.,* 95 B.R. 481 (E.D.Mich.1988); *In re Harkai,* 68 B.R. 990 (Bankr.E.D.Mich.1987); *In re Rogers,* 65 B.R. 1018 (Bankr.E.D.Mich.1986).

However, in the Chapter 11 plan context, while it is appropriate to borrow concepts of good faith from the Chapter 13 plan confirmation context, it may be error to borrow good faith concepts from the dismissal and lift stay contexts. *Madison Hotel Assocs.,* 749 F.2d at 424–25. *See also Stolrow's Inc.,* 84 B.R. at 171–72.

In the context of the present dispute, the Court concludes that the good faith requirement of § 1129(a)(3) means that the debtor must show that the treatment of the priority tax claims proposed in the plan is reasonably necessary to the success of the debtor's reorganization. If there is a sound business justification for the treatment, then the plan is proposed in good faith. If there is no good reason for the treatment of the tax claims proposed in the plan, then the plan should not be confirmed. And that is so even if the plan calls for the type of payments required by *Mason and Dixon Lines, Inc.*. Stated another way, the tax claims (and indeed all claims) should be paid as soon as is reasonably practicable consistent with sound business judgment, within the specific limits imposed by the Bankruptcy Code.

The second, related limitation on the debtor's treatment of priority tax claims under § 1129(a)(9)(C) is the requirement in § 1129(a)(11) that confirmation is not likely to be followed by liquidation or the need for further reorganization; this is commonly called the feasibility requirement. Thus, the debtor must establish that its reorganization is likely to succeed and that it is likely to meet its obligations under its plan, including its priority tax obligations.

It must be concluded that because priority tax creditors are not accorded the same voting rights and negotiating power as other creditors, the twin requirements of good faith and feasibility take on added significance and importance for such creditors in Chapter 11. Thus, when a priority tax creditor raises such issues, the Court has a duty to examine them carefully.

### B.

In this case, the Court heard evidence from Scott Gregory, the president of the debtor, concerning these issues. He testified that the debtor is in the marina business and that the one year delay in beginning payments on the tax claims would allow the debtor to spend approximately $110,000 during the first year of the plan on necessary repairs to its physical facilities. These repairs include seawall repairs, building repairs, and environmental repairs resulting from substantial soil contamination. The evidence further indicated that these repairs would allow the debtor to increase its income and would make its plan substantially more likely to succeed. It was clear that the debtor had made the honest business judgment that making these repairs would benefit all of the creditors by increasing the likelihood that all would be paid.

The witness further testified that the treatment of the claims of the other creditors was justified in light of the substantial losses they have accepted under the plan. The unsecured creditors voted to accept 1%, and the Resolution Trust Corporation has accepted a loss of nearly $4 million on its claim of $6.5 million. Only the taxing authorities will receive full payment on their claims with interest.

In the circumstances, the Court finds that this plan was proposed in good faith and is feasible.

Accordingly, the plan is confirmed.