**In re DOW CORNING CORPORATION, Debtor.**

**Bankruptcy No. 95–20512.**

United States Bankruptcy Court, E.D. Michigan, Northern Division.

Nov. 30, 1999.

*AMENDED OPINION ON 11 U.S.C. § 1129(a)(9) OBJECTIONS OF THE I.R.S. AND TEXAS COMPTROLLER*

ARTHUR J. SPECTOR, Chief Judge.

The Debtor and the Official Committee of Tort Claimants negotiated and on November 9, 1998 filed a Joint Plan of Reorganization. The plan (hereafter referred to simply as the "Plan") was subsequently amended on February 4, 1999 and modified various times. The hearing on confirmation of the Plan commenced on June 28, 1999 and closing arguments were heard on July 30, 1999. Several post-hearing briefs and other submissions were received and the Court took the matter under advisement.

On this date the Court issued its Findings of Fact and Conclusions of Law on the matter of the confirmation of the Plan. This opinion is one of several which will serve to supplement and explicate some of the findings and conclusions. At least one opinion will follow later.

A general overview of the Plan's terms is contained in the opinion on classification and treatment issues. When necessary, additional Plan terms are explained here. Except when otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

Objections to confirmation of the Plan were filed by two taxing authorities: the Internal Revenue Service ("IRS") and the Texas Comptroller of Public Accounts ("Texas Comptroller"). The IRS com-plains that the Plan fails to specify whether priority tax claims will be paid interest at the statutory rate. *Objection of IRS* at 1. It also argues that the Plan does not afford a reasonable mechanism for determining the amount of its administrative tax claim. The IRS further argues that the Plan is not clear as to how its administrative tax claim, once determined, will be paid. *Id.* Finally, the IRS asserts that a condition precedent to the Effective Date of the Joint Plan is that the IRS rules on certain tax matters in a manner reasonably satisfactory to the Debtor. According to the IRS, this may never occur and, therefore, the Plan is not really a plan because it may never become effective. *Id.* at 2.

Like the IRS, the Texas Comptroller argues that the interest rate payable on its priority tax claim cannot be determined from the Plan. It also objects to the Plan's provision for the payment of priority tax claims in six annual installments. *Plan* § 2.2. According to the Texas Comptroller, payments on such claims must be made at more reasonable intervals (e.g. monthly or quarterly).

■ The Texas Comptroller's argument that priority tax payments under § 1129(a)(9)(C) must be made monthly or quarterly, as opposed to annually, is without merit. Reorganization plans are routinely confirmed with provisions for such payments on an annual basis and there is nothing in § 1129(a)(9)(C) or anywhere else in the Bankruptcy Code suggesting that this is improper. *In re Gregory Boat Co.*, 144 B.R. 361, 363 (Bankr.E.D.Mich. 1992); *In re Sanders Coal & Trucking, Inc.*, 129 B.R. 516, 519–20 (Bankr. E.D.Tenn.1991). *See also, e.g., In re Laramie Assocs.*, No. 95–19102, 1996 WL 549984, *6 (Bankr.E.D.Pa. June 20, 1996); *In re Pierce Packing Co.*, 169 B.R. 421, 424 (Bankr.D.Mont.1994); *In re Envirodyne Indus., Inc.*, No. 93 B 310, 1993 WL 566566, *6 n. 4 (Bankr.N.D.Ill. Dec. 13, 1993); *In re Energy Resources Co.*, 59

B.R. 702, 703 (Bankr.D.Mass.1986), *aff'd,* 1987 WL 42960 (D.Mass. Aug. 5, 1987), *aff'd,* 871 F.2d 223 (1st Cir.1989), *aff'd sub nom. United States v. Energy Resources Co.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). The text of § 1129(a)(9)(C) does not require that payments be made more frequently, *see Pierce Packing,* 169 B.R. at 426, and we decline to read such a requirement into the Code. *Cf. Energy Resources,* 495 U.S. at 550, 110 S.Ct. 2139 ("While [permitting the IRS to decide how tax payments are to be allocated] ... might be desirable from the Government's standpoint, it is an added protection not specified in the Code ...."). This point is also demonstrated by the Senate's recent amendment to S. 625 (a bill to change the Bankruptcy Code). Amendment No. 2758 by Senators Roth and Moynihan passed by voice vote on November 9, 1999. It would provide some of the relief the Texas Comptroller requests. Under its provisions, the part of § 1129(a)(9)(C) the Texas Comptroller dislikes (the part that reads "deferred cash payments") would be deleted and replaced by "regular installment payments in cash." That amendment, obviously offered at the request of governmental taxing authorities like the Texas Comptroller, would do away with balloon payments of priority taxes at the end of a sometimes lengthy period and after other, junior classes of claims have presumably been satisfied. Yet even after this provision would become law, it would mandate nothing more than "regular installment payments," something which certainly allows for annual payments.

■ But the Texas Comptroller's argument may be off-base for another reason—it may not even have a priority tax claim. Section 501(a) provides, in relevant part, that "[a] *creditor* or an indenture trustee may file a proof of claim." 11 U.S.C. § 501 (emphasis added). Section 101(10), in turn, provides that a " 'creditor' means ... [an] entity that has a claim against the debtor that arose at the time of or before

the order for relief concerning the debtor." 11 U.S.C. § 101(10). On this basis, the court in *In re Bagby,* 218 B.R. 878, 881 n. 2 (Bankr.W.D.Tenn.1998), stated that "[s]trictly speaking, an entity holding a claim against a ... debtor that arose after the filing of the petition is not a creditor." The Texas Comptroller cannot, therefore, have a priority tax claim against the Debtor for taxes that arose postpetition. Rather, such taxes would give rise to an administrative expense against the estate. The Texas Comptroller states that its claim for franchise taxes against the Debtor was assessed on April 3, 1996. From this statement, one cannot determine whether the Texas Comptroller has a priority tax claim, an administrative claim, or perhaps one of each.[1] To the extent that its tax claim arose postpetition, the Texas Comptroller has, if it can prove it, a right to payment of an administrative expense for taxes. *See* 11 U.S.C. § 503(b)(1)(B) (after notice and a hearing, the court shall allow administrative expenses for taxes incurred by the estate); *see also United States v. Ginley (In re Johnson),* 901 F.2d 513, 517 (6th Cir.1990) ("[P]ost-petition ... tax claims ... fall within the express statutory provision allowing certain taxes as administrative expenses."); *In re Unitcast, Inc.,* 214 B.R. 1010, 1019 (Bankr.N.D.Ohio 1997), *aff'd,* 219 B.R. 741 (6th Cir. BAP 1998) ("Section 503(b)(1)(B) provides for administrative expense priority for taxes which are incurred by the estate.") The Plan provides the prescribed statutory treatment for administrative expense claims. *See Plan,* § 2.1. And, as stated above, to the extent that its claim is a prepetition priority unsecured tax claim, the Plan's proposal to pay it in full in annual installments is appropriate.

■ As indicated, the IRS contends that it cannot discern the rate of interest payable on its priority tax claim. The Plan provides that such claims will be paid interest at the "Plan Interest Rate." *Plan*

---

**1.** We recognize also the possibility that § 502(i) might apply.

§ 2.1. Section 1.134 of the Plan provides that such rate of interest "shall be determined, based upon then-existing market rates, as of the Effective Date." Typically, the interest rate allowed on priority tax claims is the market rate of interest. *See* 7 *Collier on Bankruptcy* ¶ 1129.03[9][c][i] (15th ed. rev.1999). Thus, the Plan provides the appropriate rate of interest in a general sense. However, the Court agrees that this aspect of the Plan is somewhat vague for it does not specify how the market rate of interest will be determined. This is not a plan-buster however. The Plan states that priority tax claims will be paid either at the Plan Interest Rate "or such other interest rate as the Court may approve." *Plan* § 2.2. Thus, if the parties cannot agree on what the appropriate market rate of interest is, the matter can be brought before the Court for resolution.

■ The Plan's treatment of the IRS's administrative tax claim is also appropriate. The Plan need not spell out the claims allowance process with respect to this claim. If the Debtor objects to the claimed amount, there will be a trial. And for whatever amount the IRS's claim is ultimately allowed, it will be paid in full on or about the Effective Date. Finally, the tax ruling which the IRS said may never occur, has, since the close of proofs, in fact been issued and was apparently satisfactory to the Debtor.

For the above stated reasons, the IRS' and the Texas Comptroller's objections to confirmation are overruled.